SEBO v. LIBBY, McNEIL & LIBBY.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—SCOPE OF
EMPLOYMENT—EMERGENCY.

Where an employee, engaged as a gardener to care for
the grounds surrounding his employer's plant, was
accidentally killed while trying to stop a runaway team
which became frightened while the driver was unload-
ing cream belonging to defendant at said plant, said
accident was one within the meaning of the workmen's
compensation act, entitling the widow to compensation
thereunder, since deceased acted in an emergency, and
it may be inferred that it was to prevent loss to the em-
ployer and in furtherance of its business.

Certiorari to Industrial Accident Board. Submitted
October 7, 1921. (Docket No. 56.) Decided Decem-
ber 21, 1921.

Julia Sebo presented her claim for compensation
against Libby, McNeil & Libby, for the accidental
death of her husband in defendant's employ. From
an order awarding compensation, defendant and the
Ocean Accident & Guarantee Corporation, Limited, in-
surer, bring certiorari. Affirmed.

*Vandeveer & Foster*, for appellants.

*Searl & Searl*, for appellee.

CLARK, J.    Plaintiff's husband, Louis Sebo, was em-
ployed by Libby, McNeil & Libby, hereinafter called
the defendant, at its plant in Perrinton. The plant,
standing several rods back from the highway, had on
its front a platform for receiving cans of milk and
cream. Leading to this platform from the highway

On injuries arising out of and in the course of the employ-
ment within workmen's compensation acts, see notes in L. R.
A. 1916A, 40, and 232; L. R. A. 1917D, 114; L. R. A. 1918F, 896.
On right of employee to compensation for injuries received
while acting in an emergency, see note in 6 L. R. A. (N. S.)
1247.

was a semi-circular driveway, having the diameter along the margin of the traveled portion of the highway. Within the driveway was a lawn in which were beds of shrubs and flowers and about a part of the margin of which was a hedge, to care for all of which Mr. Sebo was employed as a gardener. Two employees of a public drayman were unloading for defendant cans of cream from a wagon to which a team was hitched. The wagon and team were the property of the drayman. The cans had come by express. Defendant paid the express and cartage charges. The cream had been bought by defendant at Elsie and the record shows that it was owned by defendant, though it is not so conceded. It was worth about $600. While the cans were being unloaded, the team became frightened and began to run away, the men in charge being left at the platform. Just where Mr. Sebo was at this time is in dispute, but defendant claims that according to the most credible testimony he was raking the lawn near the horses and that when they started he dropped his rake, rushed to the horses and grasped a rein or bit or part of the harness to which he clung for a moment. Losing his hold he fell, receiving injuries from which he died.

The board found that the accident arose out of and in the course of the employment and awarded compensation, which defendant reviews on certiorari, contending that such finding is erroneous.

Mr. Sebo may not have known whether the cream belonged to his employer or not, nor its value. But whether he did or not and whether the cream was the property of the defendant or not, the delivery of it to the plant was the business of the employer. Mr. Sebo acted in an emergency, upon sudden impulse, to prevent a runaway upon his employer's property, and it may be inferred that the act was to prevent loss to the employer and that it was in furtherance of the em-

ployer's business.   The finding of the board, therefore, must be sustained.

It was held by the court of session, Scotland, in *Devine v. Railway Co.*, 1 Sess. Cas. (5th Series) 1105 (quoting from syllabus):

"A case for appeal under the workmen's compensation act, 1897, in an arbitration for compensation on account of the death of A, stated that A, a carter in the employment of the defenders, a railway company, was waiting with his horse and cart at one of the defenders' goods stations, when the horse 'from some unexplained cause' started off, and A in endeavouring to stop it received injuries from which he died. The defenders pleaded that the accident to A had not arisen 'out of' his employment in the sense of section 1, subsection 1 of the act; or otherwise that the Act did not apply, in respect that *quoad* A the defenders were carrying on the business of carters (to which the act did not apply), and not that of a railway.

"*Held*, that the accident arose out of and in the course of the employment of the deceased on or in or about a railway within the meaning of the workmen's compensation act, 1897."

And it was said in *London & Edinburgh Shipping Co. v. Brown*, 42 Scot. Law R. 357:

"It appears to me that there can be no doubt that the deceased workman was at the time when working immediately before the accident employed on, in, or about the factory, the work which was being done having been the unloading of a ship and the placing of her cargo upon the quay alongside. Therefore the only real question in the case is whether it can be held that he was in the course of his employment at the time when the accident to him occurred which caused his death. The circumstances are, that while at the side of the vessel he was suddenly informed that a fellow workman was unconscious in the forehold, that he at once tied a handkerchief over his mouth and got himself lowered to try to rescue the other man, and was himself suffocated.

"Is he to be held in these circumstances to have acted in his employment? I think it must be fairly held that that question may be answered as it was answered in the court below. I cannot doubt that in a sudden emergency where there is danger a workman does not go out of his employment if he endeavours to prevent its taking effect. For example, if in a yard where a man is working, a horse suddenly runs off and there is danger to others, I would hold that if the man did his best to stop the horse and met with an injury, he suffered that injury in the course of his employment. It was a right thing to do in the interests of the safety of those in the yard, and therefore in the interests of his master."

See *Donnelly* v. *Contracting Co.*, 222 N. Y. 210 (118 N. E. 605) ; 16 N. & C. C. A. 171 ; 10 N. & C. C. A. 487 ; and see review of *Miner.* v. *Telephone Co.*, 83 Vt. 311 (75 Atl. 653, 26 L. R. A. [N. S.] 1195), and *McQuibban* v. *Menzies*, 37 Scot. Law R. 526, in *Spooner* v. *Detroit Saturday Night Co.*, 187 Mich. 125 (L. R. A. 1916A, 17).

Cases involving intentional and wilful misconduct cited by counsel are not controlling. Nor shall we review the many interesting cases cited respecting an act merely incidental to the employment, as distinguished from an act done in an emergency.

The award is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.