## HARTFORD ACCIDENT & INDEMNITY CO.
### v. FRYE et al.
### No. 3935.

Court of Civil Appeals of Texas. Amarillo.
Dec. 14, 1932.

Rehearing Denied Jan. 4, 1933.

Eckford & McMahon, of Dallas, for appellant.

Morrison & Morrison, of Big Spring, for appellees.

HALL, C. J.

This is a workman's compensation case in which the Industrial Accident Board awarded Mrs. Frye and her minor daughter compensation on account of the death of N. G. Frye, the husband of Mrs. Frye.

The appellant, the insurance carrier, filed this suit to set aside the award and the case was submitted to the jury upon special issues.

The first special issue is as follows: "Were the injuries that N. G. Frye received on the 12th day of May, 1931, sustained in the course of his employment with the Schermerhorn-Winton Co.?"

This was answered in the affirmative.

Following this issue, the court instructed the jury as follows: "You are instructed that the term 'injuries sustained in the course of his employment' shall have the following meaning: Injuries of every kind and character having to do with or originating in the work, business, trade, or profession of an employer received by an employee while engaged in or about the furtherance of the affairs or

business of an employer whether upon the premises of said employer or elsewhere."

In response to further special issues the jury found that during the year preceding May 12, 1931, Frye's average weekly wage was $31.15 and that hardship and injury would result to Mrs. Frye and her daughter if the court did not decree a lump sum settlement.

The substance of the appellees' answer and cross-action is that N. G. Frye had been in the employ of the Schermerhorn Oil Company and the Schermerhorn-Winton Company, which were kindred and allied companies, for about two years prior to May 12, 1931, the date upon which he lost his life; that said employers owned two oil and gas leases on the line of Howard and Glasscock counties in the state of Texas, which said leases were about seven miles apart; that Frye's duties were as a pumper, and, when not so engaged, he was performing general work as a roustabout under the direction of George Campbell, the foreman of said employers; that on the date above mentioned, after the said Campbell had assigned to Frye work for that day to be done upon connecting lines of said company's tank and while Frye and other employees were gathering tools at the headquarters of the particular lease upon which they were working, said tools to be used in the performance of their duties, and at about 8 o'clock, a. m., one W. A. Davidson, an employee of Black, Sivalls & Bryson, Inc. (a tank company which was working upon a tank for the owner, Schermerhorn-Winton Company), gave an alarm that indicated distress and need of assistance; that all of the employees of the Schermerhorn-Winton Company who were at the headquarters, including the foreman Campbell, saw the distress signal and heard the alarm and at the suggestion of, and under the direction of, the said Campbell, went in haste to the tank; that Frye went in his employer's truck in which he had come to the headquarters and being one of the first to reach the tank and finding that Sam Davidson, an employee of the tank company, had gone into the tank to drive out some bolts and was lying upon the bottom of the tank helpless, hastily descended the ladder inside the tank to rescue Davidson, but was himself overcome and was unable to rescue Davidson or to save himself on account of the fact that gas had accumulated in the tank and both Davidson and Frye had been rendered unconscious by such gas; that, other workmen, going to the tank, finding the two men prostrate and helpless, the foreman Campbell hurriedly brought a gas mask from a point a few hundred yards away and another employee of the oil company, by using it, was able to fasten ropes to the two victims and they were drawn out of the tank, but both died a few hours later from the effect of the poison gas; that the victims were cared for and treated by physicians of the Big Spring Hospital where they had been hurriedly carried after being rescued.

It was alleged that as a pumper Frye received $150 per month, and, while engaged in doing general work, his wages were $135 per month.

By supplemental petition the appellant indemnity company alleged that, prior to the 12th day of May, 1931, the Schermerhorn-Winton Company entered into an oral contract with Black, Sivalls & Bryson, a corporation engaged in constructing tanks, by the terms of which said Black, Sivalls & Bryson agreed to repair an oil stock tank belonging to Schermerhorn-Winton Company for a stipulated price; that said Black, Sivalls & Bryson was a separate, distinct entity and was in no way connected with Schermerhorn-Winton Company; that they were rebuilding said tank under an independent, separate contract; that Schermerhorn-Winton Company had no control or right of supervision over the work being performed or over the employees of Black, Sivalls & Bryson and that the indemnity company was the insurer for Schermerhorn-Winton Company and was not an insurance carrier for Black, Sivalls & Bryson; that about 8 o'clock on the morning in question while Frye, Campbell, and other employees of the Schermerhorn-Winton Company were at the headquarters of its leasehold waiting for instructions to proceed with the day's work, W. A. Davidson, who with his brother Sam Davidson was employed by Black, Sivalls & Bryson to work about a quarter of a mile distant from the headquarters of the Schermerhorn-Winton Company, gave a distress signal which was seen and heard by the employees of the Schermerhorn-Winton Company, and immediately the said Frye and other employees left the headquarters and hastened to the tank in response to the urgent call or alarm given by W. A. Davidson; that upon reaching the tank, Frye saw the position of danger and peril of Sam Davidson, who at that time was lying upon the bottom of the tank, and thereupon voluntarily descended into the tank for the purpose of rescuing said Sam Davidson; that as a direct and proximate result of said act Frye was overcome with gas; that the situation, danger, and peril of Sam Davidson created a clear and plain emergency demanding immediate remedial action on the part of W. A. Davidson and other employees of Black, Sivalls & Bryson; that in answering the call of W. A. Davidson, Frye, in leaving his company's headquarters, became the employee of Black, Sivalls & Bryson and his resulting injury did not have to do with and originate in the work of Schermerhorn-Winton Company, but did have to do with and originated in the work of Black, Sivalls & Bryson and were received while he was engaged in the furtherance of the business of Black, Sivalls & Bryson, whose employee he became at that time.

Based upon the verdict the trial court rendered a lump-sum judgment in favor of Mrs. Frye and her minor daughter for $6,728.40.

By its first, second, and fourth propositions the appellant insists that the court should have peremptorily instructed a verdict in its favor.

Under the issues made by the pleading and evidence, we think the court would have erred in directing a verdict for appellant and these propositions are overruled.

By the third proposition the appellant contends that the injuries received by Frye, while attempting to rescue a person who was not a fellow employee when the peril of such person became apparent, did not have to do with and originate in the work, business, trade, or profession of Frye's employer nor was Frye injured while engaged in or about the furtherance of the affairs or business of his employer.

We find that the statements following most of the propositions urged by appellant do not fairly and correctly reflect the record.

As bearing upon this proposition, the record shows: That the Schermerhorn-Winton Company and its allied corporation were engaged in the business of producing and storing oil and preserving petroleum products from their lease and that Frye was their employee. That in order to preserve their products, it was necessary to provide storage tanks upon their leases and to meet this requirement in particular employed Black, Sivalls & Bryson to construct or reconstruct the tank in which Frye was injured. It further appears that there was work to be done on and about the tanks by Frye and other oil field workers in order to equip them as reservoirs for preserving the company's products. That Frye and other employees, under the direction of foreman Campbell, had worked on this same tank the day before May 12th, and were, under the direction of Campbell, to return to the tank and continue the unfinished work on the morning on which the injury occurred and in pursuance of such directions they came to the lease, had gathered their tools for use in prosecuting their work, and were tarrying for further instructions from Campbell as to the manner of the work and details concerning it when they heard W. A. Davidson's cry of distress and thereupon Frye and the other Schermerhorn-Winton employees, including the foreman and at the bidding of the foreman, rushed to the tank where they found Sam Davidson asphyxiated and prostrate upon the bottom of the tank. Campbell testified that at the time and just before the accident Black, Sivalls & Bryson had torn this particular tank down and was engaged in rebuilding it and that on May 11th preceding his death, Frye, as an employee of the Schermerhorn-Winton Company, was putting connections on this particular tank and in doing so Frye was working under his, Campbell's, direction. That on the evening of the 11th of May, he, Campbell, had instructed Frye and three other employees as to where they were to work the next morning. That Frye and the other employees had been engaged the evening before in putting connections in the tank in question and had not completed the work and his instructions were for them to proceed with the same duties on the 12th and that he was giving them specific directions on the morning of the 12th about 8 o'clock when they saw and heard W. A. Davidson's distress signals and shouting for help. Campbell testified: "I heard W. A. Davidson holler. I don't know what he said. I just heard him holler. I knew there was something wrong. I told the boys, 'Let's go to the tank.'" "Q. That included Frye? A. That included Frye, Alton, Williams and McHenry." That work usually commenced about 8 o'clock. That Frye came to the headquarters that morning in one of the company's trucks. That when they saw the distress signals, all five of them hurried to the tank, which was about 250 or 300 yards distant. That witness went in his car and Frye and the other three employees in the truck. That when witness reached the tank he found all of the other employees on the top of it and Frye and Davidson inside, lying on the bottom. Witness said that he then went about half a mile and got a gas mask, returned with it to the tank, and gave it to another employee, Gus Oppegard, who put the mask on, went down into the tank and tied ropes around Frye and Davidson, who were then pulled out of the tank and carried to the hospital where they both died several hours later. He further said that, if Davidson had not shouted for help, "we would have taken our tools and gone to work on the tank where the accident occurred."

This testimony is not contradicted, and, in the light of the facts disclosed, we must conclude that practically all of appellant's propositions are based upon a misunderstanding of the record.

The principal contention is raised by the twelfth and thirteenth propositions.

It is insisted in the twelfth proposition that the court erred in overruling and in not sustaining appellant's objection and exception No. 1 to special issue No. 1, because said issue, considered in connection with the definition of the court which followed it, requested the jury to answer three separate and distinct issues in one, and the appellant insists by the thirteenth proposition that the court erred in not sustaining its objection and exception No. 2 to the instruction following the court's special issue No. 1, because the jury is told by the court that injuries sustained in the course of Frye's employment meant injuries having to do with or originating in the work of his employer, when the

Workmen's Compensation Law provides that said term shall mean injuries having to do with *and* originating in the work of his employer, etc.

Reference to the definition given by the court and comparison with second subdivision 4 of section 1 of art. 8309 (Rev. St.), shows that the statute uses the conjunctive *and* while the court used the disjunctive *or* in defining injuries sustained in the course of employment.

We overrule these propositions. First, because the objections to the charge are not specific and do not point out the defect as is required by the statute (Rev. St. 1925, art. 2184 et seq.).

The first objection is as follows: "Plaintiff objects and excepts to special issue No. One because said issue, considered in connection with the special instructions of the Court immediately below, requests the jury to answer three separate issues in one and the same. issue and such instructions framed as they are will result in confusion in the minds of the jury."

This is more of an objection to the issue than to the definition given by the court.

In G., T. & W. Ry. Co. v. Dickey, 108 Tex. 126, 134, 187 S. W. 184, 187, Judge Phillips, in discussing the form and substance of objections to the charge of the court, said that "an objection to the charge in the particular complained of must be presented to the trial judge," and, in Walker v. Haley, 110 Tex. 50, 214 S. W. 295, he said: "The purpose of the act [providing for objections to charges] is plain. It is to provide the court, in advance, with the objections to which the charge is deemed subject, so as to afford opportunity for its correction in the particulars urged. It is, in a word, to secure, as far as possible, the preparation and submission of a correct charge to the jury."

A proper objection in this case would have been that the court in his definition used the disjunctive *or* when the statute uses the conjunction *and* preceding the words originating in the work. It is held that an objection couched in veiled language which does not clearly and specifically point out the error in the charge or the issue is no objection at all. G., C. & S. F. Ry. Co. v. Hines (Tex. Civ. App.) 4 S.W.(2d) 641, 648.

In Colvard v. Goodwin (Tex. Civ. App.) 24 S.W.(2d) 786, 787, 794, objection was made to the court's definition of undue influence, as follows: "Because same is ambiguous and confusing, and does not clearly define to the jury what would or would not constitute undue influence."

The court held that this objection was clearly too general to point out specifically any defect in the definition.

In Chase Bag Co. v. Longoria (Tex. Civ. App.) 45 S.W.(2d) 242, 243, appellant objected to the court's issue in regard to the measure of damages because it presented an improper measure of damage. Judge Gallagher said the purpose of the statute was that the court and counsel should join in a frank and sincere effort to secure a proper submission of the case and to effect such purpose counsel's objections to the charge should be specific, constructive, and helpful.

We are convinced that, on account of the insufficiency of the objections to the charge, appellant is in no position to insist upon the error, if any, committed by the court in the definition.

■ However, if we are mistaken in this and if it be admitted that the use of the word *or* instead of the word *and* is material error, nevertheless, the error is harmless for the reason that, as hereinbefore stated, all of the testimony bearing upon the issue of whether Frye was injured in the course of his employment being uncontradicted, an issue of law is presented rather than an issue of fact and the finding of the jury upon special issue No. 1 becomes immaterial.

In Georgia Casualty Co. v. Hill (Tex. Civ. App.) 30 S.W.(2d) 1055, 1056, where the issue was whether the injured party was engaged in work which was included within the Workmen's Compensation Act and where the testimony upon that issue was uncontradicted, Judge Leslie said that "the facts are undisputed, and the appellee's right of recovery therefore becomes a question of law."

In Cherry v. Magnolia Petroleum Co. (Tex. Civ. App.) 24 S.W.(2d) 549, 552, where the evidence was uncontradicted showing that an employee had been assaulted by the foreman of his employer and wounded with a knife, Judge Walker said: "It is our conclusion that the only inference to be drawn from these facts is that Cherry went outside the scope of his employment and entered upon a private quarrel of his own for reasons of his own. This is our construction of the legal effect of the facts, but that conclusion is not necessary for an affirmance of the judgment of the lower court."

It appears that the trial court had reached the same conclusion and the judgment was affirmed upon an approval of the trial court's conclusions of law.

In Norwich Union Indemnity Co. v. Maynard (Tex. Civ. App.) 300 S. W. 196, where the issue was whether certain injuries to the right arm of the claimant which had been shown by uncontradicted testimony, resulted in a loss of claimant's entire arm, the court, speaking through Judge Levy, concluded as a matter of law that such incapacity did exist and held accordingly.

"In those cases where an issue of fact material to the cause of action or defense is presented in the pleadings and where the evi-

dence thereon is undisputed one way or the other and where the evidence is of such nature that the Court may say, as a matter of law, that reasonable minds could not differ in the conclusions to be drawn therefrom, the question then becomes one of law and whatever the nature of the issue, the Trial Court should not submit the matter to the jury for a finding but he himself assume the truth of the undisputed evidence as though it had been admitted in the pleadings or established by the verdict and proceed to apply the law to the facts thus indisputably established. It is not accurate to say such undisputed facts become law, for that would be a misnomer; it is accurate, however, to say that as a matter of law the facts are true and this is sufficient to call forth the sentence of the law upon their effect." Speer's Law of Special Issues, § 35.

In Indemnity Ins. Co. of North America v. Harris (Tex. Civ. App.) 53 S.W.(2d) 631, 634, it is said: "Appellant complains that the following issue was duplicitous: 'Do you find that such injury, if any, of plaintiff was sustained in the course of his employment as an employee of the Gulf Refining Company?' This point we do not determine. Every element of this question appeared as a matter of law in favor of appellee and, therefore, appellant could not have been injured by its duplicity."

So it may be said that every element tending to show that Frye was injured in the course of his employment was shown by uncontradicted testimony, and, if the court erred in using *or* instead of *and*, the error is harmless, because the finding of the jury was, under the record, in effect a finding upon an issue of law.

Moreover, according to the weight of authority in Texas, as well as in other jurisdictions, it is our opinion that Frye was injured in the course of his employment as that term is generally interpreted by the courts.

Campbell was production foreman for the two companies which owned the leases. He stated that his authority extended to employing men, directing them what to do, keeping time, and paying them their wages; that he had authority to both hire and fire employees; that the companies maintained tanks on their leases in which to store the oil produced from the leasehold; that they had stock tanks in which oil was stored; that his office as foreman was located on the headquarters of the Kloh lease where his books were kept and from which he operated; that there were four stock tanks near his office, within a radius of three hundred yards; that on May 11, 1931, the day before Frye was injured, the latter was engaged in putting connections on one of these stock tanks, which was being rebuilt by Black, Sivalls & Bryson, for which last-named company Sam Davidson was working at the time he was asphyxiated.

We find an excellent review in appellees' brief of the decisions bearing on the question whether Frye was injured in the course of his employment and can do no better than quote, in part, the excerpts set out therein.

In the Behnken Case (Tex. Civ. App.) 226 S. W. 154, 156, Judge Graves said: "These compensation acts are remedial measures, ours especially so in that one of its objectives was to give relief to all employees injured in industrial pursuits in this state as against probably less than 20 per cent. who were before provided for under the old common-law actions founded upon negligence. * * * Such laws—indeed, the two specific clauses now under consideration when used therein—are accordingly given a broad and liberal construction by the courts in order that the humane purpose of their enactment may be realized. * * * As we understand the current of decision touching the spirit of such laws as this, the employee does not have to be actually performing some specific duty of his employment at the precise time of the injury before it can be said to have been received 'in the course of his employment,' but it is quite generally held that, if he is doing something incidental to his service while on the premises of the master, the injury under such circumstances meets the requirements and is compensable."

It is shown in Southern Surety Co. v. Stubbs (Tex. Civ. App.) 199 S. W. 343, 346, that Stubbs lost his life while employed on a dredgeboat being operated in the Texas city channel in the storm which raged on the Texas coast in August, 1915. In awarding his widow and children compensation, the court said:

"In Bischoff v. American Car [& Foundry] Co., 190 Mich. 229, 233, 157 N. W. 34, 36, it is said:

" 'Of course, the scope of such particular employment may be enlarged for the time being by the direction of some superior who has authority; and in the case of an actual emergency it may be held that any reasonable attempt to preserve the employer's property is within the general lines of an employee's duty.'

"The rules stated in the cases quoted from, we think, relieve the case at bar from any difficulty in this respect. Stubbs was living upon the dredgeboat, and at all times under and subject to the orders of its captain, and the storm had not only created an emergency which required the efforts of all employees to keep it afloat, but had produced a situation permitting of nothing else. * * * Since it was only necessary under the statute to find that the accident occurred 'in the course of the employment,' it may be that the court's further finding that the fatal accident 'arose out of the employment' was unnecessary, but under the detailed facts shown here it certainly was not error."

In Cassell v. United States Fidelity & Guaranty Co., 115 Tex. 371, 283 S. W. 127, 46 A. L. R. 1137, the court says: " 'If there is under particular circumstances in a particular vocation something appreciably and substantially beyond the ordinary normal risk which ordinary people run, and which is a necessary concomitant of the occupation the man is engaged in, then I am entitled to say that that extra danger to which the man is exposed is something arising out of the employment; and, if in consequence of that extra danger a fatality occurs, I am entitled to say that the section applies and the applicant is entitled to recover.' * * * 'The question is whether the accident was one "arising out of and in the course of employment," within the meaning of the statute. * * * That it arose "in the course of employment" is unquestioned. That it arose "out of" employment, we now hold. The claimant's presence in a factory in association with other workmen involved exposure to the risk of injury from the careless acts of those about him. He was brought by the conditions of his work "within the zone of special danger." ' "

In Federal Surety Co. v. Ragle (Tex. Civ. App.) 25 S.W.(2d) 898, 901, it appears that Ragle was an employee of a firm engaged in producing oil and gas. He laid off his work clothes and went a little way aside to crank a car in use by an employee who reported he could not crank it. This was one of the cars in which employees rode to the place of work. In cranking it a spark plug blew out and struck Ragle in the eye, resulting in the loss of sight in that eye. In holding that Ragle was entitled to compensation, the court said: "It is not necessary that an employee should have been at the time discharging some specific duty required by his employment, but it is sufficient that he was at the time of his injury engaged in doing something incidental to his employment. * * * The statute does not require that the injury be inflicted during laboring hours or within the zone of the labor to be performed. It is only required that the injury occur during the laborer's 'course of employment,' and that it be 'incident thereto' or growing out of the laborer's employment. In the case before us, the appellee's injury was sustained on the premises of his employer and in the immediate vicinity of appellee's work. While appellee's employer had not assumed the obligation of transporting appellee and his colaborers to and from Bryson to the work, yet it knew of the arrangement followed, and plainly recognized the necessity of the method of transportation. Appellee at the time was engaged in the performance of an act necessary to transport him and others over the roadway across the lease to the main traveling way leading to Bryson, his home, thus, as we conclude, falling within the beneficial terms of the Workmen's Compensation Act."

In the case of United States Casualty Co. v. Hampton (Tex. Civ. App.) 293 S. W. 260, 262, it appears that appellee was a sack sewer in the employ of the Texas Refining Corporation which operated a cottonseed oil mill at Greenville, Tex. While performing his duties in the regular manner, Miller and Brown, other employees, had a personal difficulty in the press room and soon thereafter Blackburn, the foreman, called all the employees from their respective jobs to the engine room so as to assist in tightening a rope belt. While so engaged, subforeman Brown requested the foreman to give Miller his time, meaning to discharge him, stating as the reason that "June [Miller] fights." Hearing the statement Miller straightened up from where he was leaning over pulling on the belt and made some remark to Brown. Brown jumped at Miller, slipped his knife out of his sleeve and cut Miller in the back. They then clinched. Blackburn yelled "Stop that and come on here," addressing his remark to no one in particular. When the fight started most of the employees quit pulling on the rope and appellee Hampton, thinking he had been asked to stop the fight, caught Wesley Brown's hand, in which was the knife and attempted to separate the combatants and in so doing his right hand was cut. The appellant contended that the evidence failed to show the injury arose out of and in the course of appellee's employment. The court said: "The occurrence was wholly upon the premises of the employer. As appears, it occurred 'in the engine room,' at a time, within regular working hours, 'while the men were engaged in tightening the main belt, which drove all the machinery, and which was loose and slipping to such an extent as to interfere with the proper working of the machinery, and which required tightening.' Therefore, the act in itself done by appellee, of suppressing an affray between two coemployees on the premises during working hours, must be regarded either (1) as a purely moral act, or (2) as an act that might reasonably be done in the service and business of the employer, within the Workmen's Compensation Act. * * * 'A servant does not cease to be in the course of his employment merely because he is not actually engaged in doing what is specially prescribed to him, if in the course of his employment an emergency arises, and, without deserting his employment, he does what he thinks necessary for the purpose of advancing the work in which he is engaged in the interest of his employer.' * * * As appears in the present case, a causal relation was established between the injury and the employment, and the appellee did what he might reasonably do under his employment. The disagreement and the affray arose out of the employment; namely, the recommendation of discharge of June Miller."

In Southern Surety Company v. Shook

(Tex. Civ. App.) 44 S.W.(2d) 425, 427, Mrs. Shook and her children sued to set aside an order of the Industrial Accident Board denying them compensation on account of the death of Mrs. Shook's son Lucian. Lucian Shook was in the employ of Braden Company as a pumper on an oil lease in Eastland county. He slept on the premises and kept some dogs with which he was accustomed to hunt on the premises and also maintained a croquet court near his shack. Clyde Thompson and the two Davis boys, living nearby, went at night to the shack, called Shook and his brother out of bed and asked if they had a gun, saying there were some wolves nearby and thus lured them away from home and killed both of the Shooks. Shook was not required to be at the pump but was required to keep it in order and he could hear it for something like a mile and knew whether it was running or not when he did not go away very far. The appellant contended that the injuries did not have to do with and originate in the work of the employer and were not received by Shook in and about the furtherance of the affairs of business of his employer. In quoting from Judge Greenwood in the Behnken Case, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402, the court said: "An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa [Pace v. Appanoose County, 184 Iowa, 498, 168 N. W. 916, 918]: 'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.'"

General Accident, Fire & Life Assurance Corporation v. Evans (Tex. Civ. App.) 201 S. W. 705, it seems was a suit brought by the wife and children of Russell Engledove who lost his life while in the employ of a vinegar company in an effort to save the life of Thomas Nelson, another employee of the same company, who had been poisoned in one of the company's vinegar tanks. Engledove was not at the time working about the tank, but was eating his dinner when it was announced that Nelson was in a perilous situation and a call was made for help to rescue him. Engledove came in a run and knowing there was poison to be encountered, placed a gunny sack over his face and descended into the tank for the purpose of rescuing Nelson and bringing him out. Several persons, including the superintendent and foreman, cautioned him about going into the tank and told him not to go in. It was contended that he violated positive commands of his superiors, thus leaving his employment, and became a volunteer in so doing and forfeited all rights to compensation. The court did not find he had disobeyed positive commands of his superiors and held that, because he had been brought in contact with

an emergency, he was justified in trying to save a man's life and did not forfeit his rights as an employee.

Numerous other authorities are cited by appellees, but we think the foregoing excerpts are sufficient to state the rule which should obtain in this case and we quote them with approval.

The court did not err in overruling the appellant's general demurrer to the plaintiff's pleadings.

■ Propositions seven and eight advanced by appellant are mere abstractions and are not entitled to be considered, but the same contention is advanced by the ninth proposition which is that it was the duty of Black, Sivalls & Bryson, and their employees, to prevent injury to Sam Davidson, another of its employees. when it became apparent to Black, Sivalls & Bryson's employees that Sam Davidson was in a position of peril. That the action of his coemployee W. A. Davidson, in calling for assistance was in the furtherance of his master's business and when Frye, a third party, responded to such distress call, he became in law an employee of Black, Sivalls & Bryson. Appellant does not make it clear by what course of reasoning it arrives at the extraordinary conclusion that Frye ever became an employee of Black, Sivalls & Bryson. No express contract was shown and under the circumstances no implied contract existed.

■ The seventh objection urged to the court's charge is as follows: "Plaintiff requests the Court to submit appropriate issues inquiring of the jury whether the injuries sustained by Frye had to do with and originated in the work, business, trade or profession of Black, Sivalls & Bryson, and whether the said injuries were received while engaged in and about the furtherance of the affairs or business of said Black, Sivalls & Bryson."

This seems to be another attempt to call in question the court's definition following the first issue. It certainly is not specific in pointing out any objection to the court's charge and because no "appropriate issues" were prepared by appellant which, if submitted, would have corrected the error, the proposition is without merit.

■ By the eleventh proposition appellant insists that the court erred in not submitting to the jury an appropriate special issue inquiring whether the injuries sustained by Frye were received while he was engaged in or about the furtherance of the affairs or business of Black, Sivalls & Bryson.

The appellees were not trying to recover, nor were they entitled to recover, upon any such ground and the submission of such a special issue would have been frivolous. The contention of appellant that Frye was injured while engaged in the furtherance of the busi-

ness of Black, Sivalls & Bryson, has been disposed of by what we have already said.

By the fourteenth and fifteenth propositions the appellant insists that the evidence does not show that Frye had been working at the time of his injury for substantially a year prior thereto.

Suffice it to say that the testimony is conclusive upon that point. Campbell, who kept the books and the time worked by the several employees, said that Frye's employment commenced in June, 1929, and he worked and was employed continuously from that date to May 12, 1931.

The evidence is sufficient to support the finding of the jury as to the rate of compensation and the judgment for a lump sum settlement.

We find no reversible error and the judgment is affirmed.