## SHORT *v.* KERR.

[No. 15,961. Filed June 15, 1937. Rehearing denied October 14, 1937.]

*Cooper, Royse, Gambill & Crawford,* for appellant.

*Evans & Baker,* for appellee.

WOOD, J.—This is an appeal from an award of compensation made by the full Industrial Board to the appellee as the sole surviving dependent of one Joseph Kerr, deceased, who was alleged to have suffered an accident resulting in his death while in the employ of the appellant.

The appellant assigns as error for reversal that the award of the full Industrial Board is contrary to law. The only contention which the appellant makes in support of his assignment of errors is, that the accident resulting in the death of Joseph Kerr did not arise out of and in the course of his employment.

That portion of the finding and award of the full Industrial Board in any way affecting the merits of this appeal is as follows: "And the full Industrial Board having heard the argument of counsel, having reviewed the evidence and being duly advised therein, now finds by a majority of its members that on June 12, 1936, while in the employ of the defendant at an average weekly wage of $28.85 one Joseph Kerr suffered an injury as the result of an accident arising out of and in the course of his employment, of which the defendant had knowledge; that the accidental injury resulted in the death of the said Joseph Kerr on the same day; that at the time of his death the said Joseph Kerr was living with his daughter, Catherine I. Kerr, plaintiff herein, aged 24 years, who was wholly dependent upon the said Joseph Kerr for her support; that the said Catherine I. Kerr, plaintiff herein, was physically defective.

AWARD

"It is therefore considered and ordered by the full Industrial Board of Indiana, by a majority of its members, that there is awarded Catherine I. Kerr, the plaintiff herein, as against the defendant, compensation at the rate of $14.32 per week during the period of her dependency but not exceeding 300 weeks as to time, beginning with June 12, 1936, deferred payments to be brought up to date, paid in cash and in a lump sum."

From the evidence which is not in conflict, it appears that the appellant had a contract to erect concrete structures upon a public highway in Monroe County; Joseph

Kerr was employed by appellant as a foreman in the performance of this work; "He had the excavating gang, the digging out and pouring the concrete. He acted as a foreman on the entire job." On the day of the accident resulting in Kerr's death, he and three other workmen were engaged in digging out a tree three feet in circumference located on the north side of the highway in process of improvement, to make room for some concrete work. An effort was being made to fell the tree north; in order to accomplish this, the men dug around the roots of the tree, "cutting more on the north side to make it go north and had cut limbs off of the south side." Jacks were placed on the south side of the tree, "we were jacking the tree north and had it started north." "It fell south while we were working; we believed the tree would fall north there when we were working on the tree, but there came a big puff of wind and when it hit the tree, the tree started and Mr. Kerr said 'get back, boys, the tree is going!' The tree fell across the road on the south side." When the tree fell to the south side of the road it broke down some high tension wires, at the same time one of the men said he heard somebody halloo, the men went up the road a short distance, probably forty or fifty feet from where the tree fell, there they found a man lying, he was about thirty feet west of the tree, "his head was in the branches and his feet was lying out." "Question. Tell the board what happened to Mr. Kerr. Answer. He said, 'boys, I think there is a man hurt and we will have to get in there and get him out.' He went in there and got hold of the man and got right at the man and reached down to rescue the man and grabbed his hand. He tried to pull out of the wire and sank down to the post. There was nothing we could do and we were all excited." Both Kerr and the man he sought to rescue came in contact with the high tension wires brought down by the falling

of the tree and were instantly killed. The man whom Kerr endeavored to rescue was walking along the south side of the highway. "I soon saw that he had gotten into the live wire and that he had been running west to get out of the way of the tree and when the tree broke the wire it caught him." Kerr's contract did not require him to handle live wires, nor did it require him to go to the rescue of any person who might be imperiled and who was not in the employ of the appellant in the vicinity of the job where Kerr was working. The man whom Kerr endeavored to rescue was walking along the public highway when he was caught by. the falling tree and high tension wires. There was no evidence that the highway was closed to the public use at the time of the accident or that any unusual risk would be incurred in its use.

The parties agree that in order to entitle the appellee to compensation the evidence must be sufficient to sustain the finding by the Industrial Board, as a fact, that Joseph Kerr's death resulted from an injury by accident arising out of and in the course of his employment by appellant.

In order to accomplish the humane purposes for which the Workmen's Compensation Act was passed, it must be liberally construed, and the phrase "by accident arising out of and in the course of the employment" (Acts 1929, p. 537, sec. 40-1202 Burns 1933, sec. 16378 Baldwin's Ind. St. 1934), should be liberally construed so as to accomplish the humane purpose of the act. *Lasear* v. *Anderson* (1934), 99 Ind. App. 428, 192 N. E. 762, and authorities there cited.

In support of his contention, appellant insists that at the time Kerr met with the accident resulting in his death, he was "engaged in a voluntary act outside the scope of his employment"; that the appellee's decedent voluntarily left the employment

and voluntarily went 40 to 50 feet away from his employment and voluntarily engaged in attempting to rescue one Wycoff, who was entangled in fallen electric wires and thereby met with fatal injury. Thus the appellant draws the deduction from the evidence that Kerr, voluntarily left his employment and voluntarily engaged in attempting to rescue Wycoff from a perilous and what proved to be a fatal position, and that he, Kerr, had voluntarily placed himself outside his employment when he was killed. Whether this is a reasonable deduction to be drawn from the evidence is not necessary for this court to determine. What this court must determine is whether or not that is the only reasonable deduction to be drawn from the evidence, and the facts established thereby under the rules of law applicable to these established facts.

As heretofore stated, the undisputed evidence shows that while a "gang" of men, with Kerr as foreman, was in the act of felling a tree, because of a gust of wind striking it, the tree fell south instead of north as the workmen had planned; that Wycoff, a pedestrian on the highway, ran west from his location to avoid being hit by the tree, Kerr and his "gang" of men were in the act of felling; that Wycoff failed of his purpose; that he was caught in the branches of the tree and became entangled in high tension wires which the tree brought down as it fell to the ground. At this instant one of the members of the "gang" heard an outcry, whereupon Wycoff was discovered in his perilous position, which was created by the felling of the very tree on which Kerr and his "gang" were working. Kerr, discovering Wycoff's position in the same tree on which he and the "gang" of men had been working, rushed to the rescue of Wycoff and was killed.

These facts conclusively show that Kerr, who was the foreman of the "gang" of men, and the person in high-

est authority present representing appellant, ■ was suddenly and without warning confronted with a grave emergency. The moment was one of excitement. As a result of the falling of the tree on which he and the "gang" of men were working, in the manner in which it did, a human life was being snuffed out and the possibility of loss to his employer seemed apparent, facing this situation, acting in obedience to natural and commendable impulses of humanity, without leaving the location of the tree on which he was working, Kerr rushed to the rescue of Wycoff and was electrocuted. If at this time Kerr was doing what he might reasonably do or what he might reasonably have been expected to do, then his death arose out of and in the course of his employment. *Marion, etc., Works* v. *Ford* (1924), 82 Ind. App. 152, 144 N. E. 552.

The case of *Ocean, etc., Co.* v. *Industrial Accident Commission* (1919), 180 Cal. 389, 182 Pac. 35, is quite analagous to the instant case. One Nelson was in the employ of the Sibley Company, he was at the latter's barn at the time of the accident stabling horses in the course of his employment; he was injured in an attempt to rescue a child who was in danger of being run down on the company's premises by an automobile driven by the president of the company, who was there on company business. In holding that Nelson was entitled to compensation, the court said (p. 392) : "We have no hesitation in saying upon these facts—and as we have said, they are the most favorable that can be properly contended for by the Insurance Company—Nelson was injured in the course of his employment. To be sure, he was not employed to rescue children. But certainly it was reasonably within the course of his employment, within the scope of those things which might reasonably be expected of him as an employee, that he should attempt to prevent an accident on his employer's premises, par-

ticularly where the employer would not improbably be responsible for the accident. It is not difficult to imagine how summarily the services of an employee would be dispensed with, who, seeing that such an accident was about to happen, held back and did nothing to prevent it on the excuse that it did not come within the scope of his employment. If, in this case, Nelson, instead of being injured in an attempt to prevent a child being run over on his employer's premises by an officer of his employer there on his company's business, had been injured in an attempt to put out an incipient fire accidently started in the barn, it is hardly possible that any question would have been made. Yet there is no real distinction between the two cases. Nelson was no more employed to put out fires than he was to rescue children. The point is that the danger which threatened, and in attempting to remove which he was hurt, was one which threatened his employer and directly concerned it, and with which Nelson was confronted in the discharge of his customary duties."

In *Waters* v. *William J. Taylor Co.* (1916), 218 N. Y. 248, 112 N. E. 727, the husband of the claimant was in the employ of the appellee, who had a contract for performing part of the work necessary in the construction of a building. The Duffy Contracting Company was engaged in performing other work in the construction of said building requiring an excavation. "While one of the employees of the last-named company was at work in the excavation, the bank thereof caved in and he was caught. This occurred about 20 feet from where Waters was at work, and he went to the assistance of the endangered employee. While he was engaged in the attempt to release him, another cave-in occurred, which so seriously injured Waters that he subsequently died." (p. 249).

In holding that the claimant's husband suffered injuries from an accident arising out of and in the course

of his employment, the court said (pp. 251-252) : "Independent of any legal obligation which might require the master to attempt to rescue the servant from the dangers of an emergency, there is a moral duty resting on principles of humanity, and those principles ought to apply to a contract of employment and broaden its scope so as to permit a servant to do as Waters did in attempting to rescue a fellow workman although technically working for a different employer.

"And certainly it would be a narrow and disappointing view if in judging the conduct of a workman under the remedial provisions of the Workmen's Compensation Act we should hold that the legislature intended to deprive him of the benefits of the act because in going to the rescue of another workman under such circumstances as arose here he has stepped somewhat beyond the limits which would fix the scope of his employment under ordinary circumstances. That act is framed on broad principles for the protection of the workman. Relief under it, generally speaking, is not based on the negligence of the employer, or limited to the absence of negligence on the part of the employee. It rests on the economic and humanitarian principles that compensation should be given at the expense of the business to the employee or his representatives for earning capacity destroyed by an accident in the course of or connected with his work, and this not only for his own benefit but for the benefit of the state which otherwise might be charged with his support. This purpose ought not to be defeated by placing too narrow a limit upon the nature of the acts which will be regarded as pertaining to his employment."

For other cases where the facts and circumstances were somewhat similar to those presented by the record in the instant case and where compensation was awarded, see *Babington* v. *Yellow Taxi Corp.* (1928),

250 N. Y. 14, 164 N. E. 726, 61 A. L. R. 1354; *Hartford, etc., Co.* v. *Frye* (1933), (Tex. Civ. App.), 55 S. W. (2d) 1092; *Brock-Haffner Press Co.* v. *Industrial Commission* (1920), 68 Colo. 291, 187 Pac. 44; *Dragovich* v. *Iroquois Iron Co.* (1915), 269 Ill. 478, 109 N. E. 999; *Baum* v. *Industrial Commission* (1919), 288 Ill. 516, 123 N. E. 625; *Sebo* v. *Libby, McNeil & Libby* (1921), 216 Mich. 351, 185 N. W. 702; *Aitken* v. *Fenlayson, etc.* (1914), 51 S. C. L. R. 653.

Appellant also contends that he is not liable to appellee for compensation because the evidence is uncontradicted, that the accident resulting in Kerr's death was caused through an act of God, and that the employer is not liable for such acts.

The record does not sustain appellant's contention on this phase of the case. The workmen had dug around the roots of the tree, digging more on the north than on the south side; they had cut the limbs off of the south side of the tree, placed jacks on the south side of the tree with which to apply pressure to that side of the tree causing it to fall to the north; it had started to the north, and it was while it was in this position, that "a big puff of wind" blew against it and caused it to fall south. There is no evidence in the record that the "big puff of wind" was anything unusual; that it was in the nature of a tornado or that any other trees were blown down or damaged by it.

The editors, in discussing the phrase "Act of God" in 1 C. J. S. 1423, say: "It has been said that the term excludes the idea of human agency, and indeed, the principle embodied in the definitions is that the act must be one occasioned exclusively by the violence of nature and all human agency is to be excluded from creating or entering into the cause of the mischief. What is described as perhaps the most accurate and specific definition that could be given is that ascribed

to Lord Mansfield, in an early English case, namely a natural necessity, which could not have been occasioned by the intervention of man, but proceeds from physical causes alone. The phrase has been otherwise defined an act, event, happening, or occurrence, a disaster, an effect due to natural causes, an inevitable accident or disaster, a natural and inevitable necessity, which implies entire exclusion of all human agency, which operates without interference or aid from man, and which results from natural causes and is in no sense attributable to human agency; an accident which could not have been occasioned by human agency, but proceeds from physical causes alone; . . ." See also 4 R. C. L. sec. 183, p. 709, where the editor says: "A careful analysis of the various definitions to be found in the books, of the act of God, discloses that practically all agree in requiring the entire exclusion of human agency from the cause of the injury or loss." See also *Watts* v. *Evansville, etc., Co.* (1922), 191 Ind. 27, 129 N. E. 315. From the facts as disclosed by the evidence the falling of the tree was contributed to by human agency.

We conclude that the evidence was sufficient to sustain the finding of facts and that the finding of facts is sufficient to sustain the award of the full Industrial Board.

Our attention has been called to the fact that an error was committed in computing the weekly compensation to be paid to appellee. In the award of the full Industrial Board, the weekly compensation to be paid appellee is fixed at $14.32 per week, while the correct amount is $15.87 per week. The Industrial Board is directed to correct this error in its award so that the amount of compensation to be paid to appellee will be $15.87 per week from June 12, 1936, and as so corrected the award of the full Industrial Board is affirmed, with the statutory penalty of five per cent.