## LARSON v. LOCK JOINT PIPE CO.

1. WORKMEN'S COMPENSATION—EMPLOYER'S LIMITATION OF SPHERE OF EMPLOYMENT—EXCEPTIONS.

An employer has the right to limit the sphere of employment of the employee and to prohibit him from working in places dangerous to life and limb, and where the employment has been fixed by the employer he may not be required to respond in compensation where the accident occurs outside said sphere except where employee leaves such sphere in an emergency to prevent loss or damage to his employer's property or to rescue a fellow workman in imminent danger or where orders have been flagrantly violated.

2. SAME—SAND AND GRAVEL ELEVATOR REPAIRMAN—DEATH—EVI-DENCE.

In dependents' proceeding to recover workmen's compensation for death of employee whose duties required him to go on top of 65-foot sand and gravel elevator shaft in order to release

obstructions that might clog the chute and to make repairs, where evidence showed that shortly after conveyor system had been started for the day's work it stopped, a wrench usually kept at top of shaft was found at the bottom of the shaft, and later decedent's hat and body were found inside the shaft, and that the machinery was not in motion when decedent had gone to the top a short while previously, but there was no evidence that deceased had disobeyed instruction that he was not to go up to the top when the machine was running, finding of department of labor and industry that deceased was killed while in performance of duties incident to his employment was justified.

3. SAME—INFERENCES.
   In order to grant an award of workmen's compensation, an inference may not be built upon an inference.

Appeal from Department of Labor and Industry. Submitted April 8, 1941. (Docket No. 5, Calendar No. 41,406.) Decided June 2, 1941.

Olive Larson and others, dependents, presented their claim against Lock Joint Pipe Company, employer, and American Mutual Liability Company, insurer, for compensation for death of Martin Larson while in its employ. Award to plaintiff. Defendants appeal. Affirmed.

*Louis E. Maggini* (*Thomas G. Roach*, of counsel), for plaintiff.

*Alexander, McCaslin & Cholette*, for defendants.

SHARPE, C. J. On January 16, 1940, Martin Larson was fatally injured on the premises of defendant company and his dependents seek compensation as the result of his death.

Defendant company was engaged in the manufacture of concrete and steel pipe for the Lake Michigan-Grand Rapids water system. In the manufacture of the pipe, defendant company used

a sand and gravel elevator approximately 65 feet high to convey materials to a mixing bin from which it was conveyed to a concrete mixer. Martin Larson and another man assisted the foreman in operating the elevator. Larson's duties were to assist in repairing the elevator machinery and preparing the machinery for the day's work, to break up chunks of gravel and sand in the mixing bin, and to dislodge any chunks in the chutes which projected from the top of the elevator shaft into the bin.

About 10 o'clock in the morning of the day of the accident and before the machinery of the elevator had been put in motion, decedent was engaged in breaking up chunks of gravel and sand in the mixing bin some 40 feet above the ground. About this time the foreman started the conveyer system and almost immediately the machinery stopped.

While a fellow workman was digging out sand and gravel at the bottom of the shaft, he found a wrench which was generally kept at the top of the shaft and later decedent's cap. Finally decedent's body was discovered near the bottom and inside of the elevator shaft.

The department of labor and industry made the following finding of facts:

"The record leaves no doubt that decedent's duties required that he go to the top of the elevator shaft on various occasions for the purpose of greasing, making repairs and replacements on the machinery, and also to clean out the chutes which projected from the top of the shaft to the bin, some 25 feet below. He was seen at the top of the shaft at various times during the course of his employment both by Lorenzo Pirozzto, a fellow workman, and decedent's widow, who brought him to work each morning and came for him at or about quitting time each day. It is not disputed that plaintiff's

decedent and his foreman worked overtime the evening prior to the accident, at which time decedent was at the top of the elevator shaft doing work which was necessary in order that the machinery be in readiness for operation the following morning. Whether such work was completed is not known. It is not disputed that on the morning of the accident, which incidentally was a cold, wintry morning, plaintiff's decedent had to remove the canvas from the bin and had been instructed to break up the chunks of sand and gravel in the bin which was located approximately 40 feet from the ground. Admittedly, chunks of sand and gravel became lodged in the chutes which projected from the top of the elevator shaft and to clear those chutes it might be necessary to go to the top of the shaft. Shortly before the accident, his foreman left decedent at the top of the bin, went to the ground, talked for a short time with a truck driver and, without further ascertaining the whereabouts of the decedent, turned the switch which put the machinery in operation. Almost immediately the conveyor system stopped and a search at the lower end of the shaft for the cause of such stopping disclosed the wrench which was usually kept at the top of the elevator shaft and used for repairs. Along with this was found decedent's body at the bottom of the shaft. From these evidentiary facts, only one natural and reasonable inference may be drawn, namely, plaintiff's decedent was at the top of the elevator shaft on the morning of the fatal accident, doing work which his employment necessitated."

The department entered an award for dependency of $17.33 per week for 300 weeks together with the statutory funeral allowance of $200.

Defendants appeal and contend that the finding of facts by the department of labor and industry is not supported by the record in the case. It is urged that deceased had been instructed not to go on top

of the elevator shaft without the foreman's permission; that decedent had not been given permission to go to the top of the shaft on the morning he was killed; that there was no necessity for his being there and that he was up there contrary to instructions; that the last instruction given to decedent was to break the lumps in the bin; that it is not possible to see a man at the top of the shaft when a person is standing below in a position to start the machinery; and that the only way for a person to be found in the shaft would be for him to enter from the top of the shaft.

The rule applicable to cases of this kind may be found in *Gacesa* v. *Consumers Power Co.*, 220 Mich. 338, 350 (24 A. L. R. 675), where we said:

"The employer has the undoubted right to limit the sphere of employment of the workman. He has the right to prohibit him from working in places which are dangerous to life and limb. This is in the interest of the employee primarily. The sphere of employment having been fixed by the employer he should not be required to respond in compensation where the accident occurs outside that sphere.

"The rule, like most rules, is subject to exceptions, as where the employee in an emergency leaves the sphere of his employment to prevent loss or damage to his employer's property (see *Sebo* v. *Libby, McNeil & Libby,* 216 Mich. 351), or where the employee in an emergency leaves the sphere of his employment to rescue a fellow workman in imminent danger (see cases cited in *Sichterman* v. *Kent Storage Co.,* 217 Mich. 364, 20 A. L. R. 309), or where the orders have been flagrantly violated to the knowledge of the employer (*Rayner* v. *Sligh Furniture Co.,* 180 Mich. 168 [L. R. A. 1916A, 22, Ann. Cas. 1916A, 386, 4 N. C. C. A. 851]), or where the instructions are not established (*Kent* v. *Boyne City Chemical Co.,* 195 Mich. 671)."

Defendants rely upon the general rule above stated and claim that decedent disobeyed instructions and came to his death as a result thereof.

The record shows that the instructions given decedent were given by Mr. Melinn, defendant company's foreman, who testified that he "told him (decedent) not to go there again like that when the machine is running."

There is also evidence that decedent's work required him to go up on top of the elevator shaft in order to release obstructions that might clog up the chutes; that in order to remove obstructions in the chute, it was sometimes necessary to remove a bucket from the chain length and in order to do this one man would have to go to the top and release the chain tightener, remove the bucket from the bottom of the shaft, and then retighten at the top of the shaft; that a fellow workman often saw decedent at the top of the elevator; that on the evening before the fatal accident, decedent and his foreman worked overtime removing a bucket; and that the machinery was not in motion at the time decedent went to the top.

There is a strong inference that decedent was killed while in the performance of duties incident to his employment. This inference is borne out by the fact that no one went to the top unless there was something to be repaired in the elevator; that a wrench used for such purposes, usually kept at the top, was found with the body of decedent at the bottom of the elevator shaft; and that decedent had been at work the night before making repairs at the same place where he was killed the following morning.

In the case at bar, the department of labor and industry found that the orders given to decedent were, *not to go on top of the elevator shaft when the*

*machinery was running;* and that decedent did not disobey those orders.  We recognize the rule that in order to grant an award, inference may not be built upon inference, but are constrained to hold that in the case at bar, the department of labor and industry had facts as well as legitimate inference upon which to base an award.

The award is affirmed, with costs to plaintiffs.

BUSHNELL, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.  MCALLISTER, J., took no part in this decision.