Before State Industrial Commission, Respondent.

In the Matter of the Claim of Sebiastiana Pulos Priglise, Respondent, for Compensation under the Workmen's Compensation Law, for Herself and Minor Children, for the Death of Her Husband, Frank Priglise, *v.* Fonda, Johnstown and Gloversville Railroad Company, Employer and Self-Insurer, Appellant.

Third Department, July 8, 1920.

**Workmen's Compensation Law — death of railroad flagman while rescuing persons in danger on tracks of another railroad — accident not arising out of and in course of employment.**

Where a person, employed as a flagman at a place where a highway crossed the tracks of his employer's electric railroad, left his station and was killed on the tracks of another railroad, which paralleled that of his employer, while he was attempting to rescue children who were on said tracks and endangered by an approaching train, the accident did not arise out of and in the course of his employment, where the tracks on which he was killed were protected by another flagman and gateman and were fifty feet distant from the tracks of the decedent's employer, there being no community of interest whatever between the railroad companies in respect to the highway crossings.

John M. Kellogg, P. J., dissents, with memorandum.

Appeal by the defendant, Fonda, Johnstown and Gloversville Railroad Company, from a decision and award of the State Industrial Commission, made on the 11th day of September, 1919, modifying a previous award made on the 14th day of October, 1918, with notice of intention to bring up for review an award of said Commission made on the 14th day of October, 1918.

*Charles S. Nisbet,* for the appellant.

*Charles D. Newton,* Attorney-General [*E. C. Aiken,* Deputy Attorney-General, of counsel], for the respondents.

Cochrane, J.:

At the place of the accident the appellant operates a double-track electric railroad parallel with and contiguous

to the four-track railroad of the New York Central Railroad Company. The two railroads are crossed by a public highway and except at the highway intersection are separated from each other by a line fence. The railroads extend easterly and westerly and the highway nearly northerly and southerly. The railroad of the appellant is the southerly one of the two. The distance between the two sets of tracks is about fifty feet. The New York Central crossing is protected by gates raised and lowered by a gateman stationed north of the track and west of the highway. The crossing of the appellant was not provided with gates but was protected by a flagman or watchman who when his duties did not otherwise require usually sat on the north side of the appellant's tracks and east side of the highway because from that position he could to better advantage guard the crossing. The deceased employee Priglise was the flagman or watchman at this crossing.

On the occasion of the accident some school children approached the New York Central crossing from the north and waited for a freight train to pass on the northerly track. After it had cleared the crossing they proceeded southerly. Another freight train was approaching on the southerly track of the same railroad. The gateman guarding that crossing shouted to the children to stop. The evidence is conflicting as to whether the gates at that time were up or down. The fact is immaterial as far as this case is concerned. Two of the children, being brothers, did not heed the warning but attempted to cross in front of the approaching train. The younger of the two stumbled and fell on the track. The elder lad, who had reached the other side, went back to rescue his brother and succeeded in doing so but was killed in the attempt. In the meantime Priglise, observing the danger of the boys, left his crossing and went to their assistance and was himself struck and killed by the train. The question is did the accident to him arise out of his employment.

The findings of the Commission seek to establish the inference that the northerly approach to these two highway crossings was guarded by the gateman of the New York Central Railroad Company and that the southerly approach to both of them was guarded by the deceased employee of the

appellant. No such inference is justified by the evidence. The arrangements of the two railroad companies for guarding the two crossings were as complete and independent of each other as if the crossings had been separated by a distance of miles. There was ample space between the two crossings for pedestrians or vehicles after having crossed one railroad to stop and await the passage of a train on the other, and as a matter of fact each of the two crossings was guarded on both sides by the two railroad companies respectively without reference to each other. The duties of Priglise were confined entirely to the crossing of the appellant. The uncontradicted evidence shows this to be the fact.

In *Matter of Waters* v. *Taylor Co.* (218 N. Y. 248) an award was sustained where an employee engaged in the construction of a building was killed while attempting to save the life of another employee engaged in the same construction but working for a different employer. The question in that case as stated in the opinion was whether the general employment of the deceased employee authorized his attempt to rescue from death a fellow-laborer " working only a few feet away on the same general undertaking, although for a different employer." It was further stated that " his act was prompted by the relationship existing between himself and a fellow-workman caused by their employment on a common undertaking " and emphasis was laid on the fact that the fellow-workman was only " technically working for a different employer." The opinion was carefully limited to the facts of the particular case. In *Matter of Di Salvio* v. *Menihan Co.* (225 N. Y. 127) the court in reviewing a number of authorities in which it had been held that the accident arose out of the employment alluded to the *Waters* case and said that perhaps it went farther than any of the others and again called attention to the fact that the rescued workman was only technically in the employ of an independent contractor and in explaining the decision said that between the work for which the employee was engaged and the disputed act which led to the accident there was a real relationship which brought the accident within the range of employment.

It seems to me that to sustain the award in this case it is

necessary to extend the doctrine of the *Waters* case much beyond the limits there existing and to go farther than any case to which our attention has been called. The link connecting the employment with the accident which existed in that case is missing here. There was no community of interest between the two railroad companies in respect to these two crossings. There was no co-operation on the part of either employer or employees. Certainly the act of the deceased employee was not within the contemplation of his employment because the other railroad company employed a man to prevent the identical situation which led to the accident. It was the duty of the gateman of the New York Central railroad to keep people off its tracks when a train was approaching. It could not have been contemplated or anticipated that an emergency would arise authorizing Priglise to do that which it was the duty of the New York Central gateman to do or which became necessary or proper because of his omission of duty. The accident occurred on different premises and without any relationship connecting the accident with the employment. The act of Priglise was heroic and elicits the highest commendation, but we must not permit our admiration for his heroism to blind us to the injustice of requiring his employer to pay for his heroism no matter how meritorious unless it was displayed in an act which properly can be said to have arisen out of and in the course of his employment. (Workmen's Compensation Law, § 10; Id. § 3, subd. 7, as amd. by Laws of 1917, chap. 705.)

I advise that the award be reversed and the claim dismissed.

All concur, except JOHN M. KELLOGG, P. J., dissenting with a memorandum.

JOHN M. KELLOGG, P. J. (dissenting):

The crossing was practically a double crossing over the same road. The New York Central road maintained gates; the defendant road put the claimant at its part of the crossing for the protection of people. When not upon the crossing, his station was near the property line of the companies. He had no other duty except to protect the public at the crossing, and the situation was so complicated that when he saw a

little child about to be run down by a Central train, it was clearly within the line of his duty and the dictates of humanity to exercise his function as a life saver and save the child. If he had remained in his chair, and witnessed the death of the child when he apparently could have saved it, he would undoubtedly have lost his job. The claimant only did what his employer would have done and, if the employer had observed the situation, it would have required the employee to go to the rescue. From the nature of the service, it was a fair condition of it that in an emergency like this the employee was to act as a human being and that by such action he should not abdicate the employment. His actions were fairly incidental to his employment. In *Matter of Waters* v. *Taylor Co.* (218 N. Y. 248) two contractors were working at their respective jobs on the same building, and when the employee of one contractor went to the relief of the employee of another contractor in another part of the building, it was held that he was well within the scope of his employment in doing the humane act. In that case neither contractor was engaged in a business peculiarly hazardous and neither man was there for the purpose of protecting any one from harm but was charged with the duty of doing his ordinary day's work. Here was practically a double crossing, each railroad having an employee to protect the public while using the same road. The men were placed in a position calling for quick action in an emergency to save life. Any distinction drawn between the *Waters* case and this case favors us. I am for an affirmance.

Award reversed and claim dismissed.