MARION MALLEABLE IRON WORKS v. FORD ET AL.
[No. 11,943.  Filed July 2, 1924.  Rehearing denied November 12, 1924.]

1. MASTER AND SERVANT.—*Injury "arising out of and in the course of employment" defined.*—If, at the time of the injury of a workman, he was doing what he might reasonably do, or what he might reasonably have been expected to do, then his injury, under the Workmen's Compensation Act (Acts 1915 p. 392, §8020l et seq. Burns' Supp. 1921), arose out of and in the course of his employment.  p. 155.

2. MASTER AND SERVANT.—*Death of electric crane operator held arising out of and in the course of employment.*—Death of an operator of electric crane by electrocution, after taking hold of a highly charged wire, the insulation of which was defective, that had been broken by the crane boom, to remove it from the railroad track in the street, was an accident arising out of and in the course of his employment' and was compensable under the Workmen's Compensation Act (Acts 1915 p. 392, §8020l et seq. Burns' Supp. 1921) even if he was negligent, as negligence does not count in the compensation plan. p. 155.

3. MASTER AND SERVANT.—*Reasonableness of conduct of workman at time of his injury question for Industrial Board.*—Whether the conduct of a workman was reasonable in taking hold of high-voltage electric wires to remove them from the street after they had fallen, was a question for the Industrial Board, whose determination will not be disturbed on appeal. p. 156.

From Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Ruth Ford and others against the Marion Malleable Iron Works.  From an award for applicants, the defendant appeals.  *Affirmed.*

*Joseph W. Hutchinson,* for appellant.

*David M. Belle,* for appellee.

The Industrial Board awarded benefits to the dependents of Cecil C. Ford, deceased, who at the time of his death was an employee of the Marion Malleable Iron Works.  The only question presented by this appeal is:  Did the employee come to his death by accident arising out of and in the course of his employment?

In the matter of descriptions of places and things, the evidence is incomplete; but by indulging some inferences, we are able to construct the following narrative:

Cecil C. Ford had been in the employment of the Marion Malleable Iron Works for a period of fifteen or eighteen years. During the last two or three years of his employment, his work was to unload coal and iron from railway cars. In unloading iron, he was required to use an electric crane. It seems that the electric crane was something in the nature of a flatcar, on which was a cab in which the workman was stationed while operating the crane. The car was equipped with a boom, a pulley, and a wire cable to the end of which a magnet was attached. The device was operated by electricity. In the operation of the outfit, the workman was furnished a helper.

Several sidetracks or spurs which belonged to a railway company extended into the plant of the employer and were used by the employer. The crane was operated upon a track which belonged to the employer. A public street known as Miller avenue runs along one side of the plant and the tracks extend into that street. On July 18, 1923, the workman and his helper were taking the crane on the track toward some cars for the purpose of unloading them. As they proceeded the workman found that the movement of the crane was obstructed by some of the cars. In order to get past the obstructing cars he elevated the boom with the intention of swinging the magnet over the top. In so doing the cable came in contact with a high-voltage wire which furnished power to the plant. That wire belonged to some company that furnished the employer with electricity. When the cable came in contact with the feed-wire, the wire was quickly severed. The ends of the wire fell upon the tracks in the street and ex-

tended across the steel rails. The north end of the wire blazed up quite high, and moved or squirmed about with considerable vigor. The south end of the wire blazed up for an instant only and then lay perfectly quiet. When the cable came in contact with the wire the crane became heavily charged with electric current. The workman's helper on the crane, although he wore heavy leather gloves, was severely shocked.

At the time of the accident a teamster driving on Miller avenue approached the scene. The workman (or his helper) warned the driver to stop his team because of the danger, and the warning was obeyed, but the teamster did not get off his wagon for the reason that he could not leave his horses. The workman left his cab and went onto the street. Just then a Mr. Roberts appeared on the scene. Roberts was in the employ of the Marion Malleable Iron Works and was commonly called a watchman. He was clothed with what he calls "police power." It was his duty to take charge of unusual or abnormal situations caused by accidents or otherwise, to give directions and orders, and to control such occasions. Roberts told the workman that he should not touch the burning wire but that he might take a stick or a board and push it off the street and back over the sidewalk. Roberts then went to a telephone to call the electric company. The workman found a board and with it he pushed the blazing wire off the street and back over the sidewalk. He then took hold of the other wire, dragged it to a post, wrapped it two or more times around the post, and while holding it in his grasp he was electrocuted.

DAUSMAN, J. (after making the foregoing statement) :

If, at the time of the injury resulting in his death, the workman was doing what he might reasonably do,

or what he might reasonably have been expected to do, then his death arose out of and in the course of his employment. *Union Sanitary Mfg. Co.* v. *Davis* (1917), 64 Ind. App. 227. We must keep in mind that the severance of the high-voltage wire and the falling of the two parts thereof created a condition of grave peril. The moment was one of excitement. Life and property were endangered. A man with a team of horses had approached, and it was only natural that others might soon approach the scene of danger suddenly created in a public street. In getting down from the crane and going upon the street to remove the source of the danger, the workman was acting in obedience to a natural and commendable impulse. Surely he was not censurable for removing the blazing wire from the street; for in so doing he was obeying the direction of his superior. The legitimate inference is that he believed that the other wire was not electrified. The uncontradicted evidence is that the wire was insulated, but the insulation was somewhat deteriorated. When he grasped the wire in his hand, he encountered a hazard the seriousness of which he probably did not appreciate. The fatal consequence makes it clear that he exercised bad judgment. He may have been negligent; but negligence does not count in the compensation plan.

At this point certain questions arise spontaneously. Was the wire electrified when he picked it up? Was the current turned on after he had wrapped the wire twice around the post? Was the post electrified by some other wire? The evidence furnishes no answer.

There is another element which must not be overlooked. It is a legitimate conclusion to be drawn from the evidence that it was necessary to remove the wires from the railway tracks before the workman could pro-

ceed to discharge his regular duties. In that event, he was pursuing the line of his employment.

Whether the conduct of the workman was reasonable, in view of all the circumstances, was primarily a question for the Industrial Board. That question the board has determined and we would not be justified in disturbing its conclusion.

The award is affirmed.

Nichols, J., not participating.