Weitz *v.* Weitz (et al., Appellant).

Argued May 3, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, RHODES and HIRT, JJ.

192

*Harry J. Nesbit,* for appellant.

*Harold H. Herwitt,* for appellee.

OPINION BY STADTFELD, J., June 28, 1939:

This is an appeal from an order of the Court of Common Pleas of Allegheny County, entering judgment upon an award by the Workmen's Compensation Board in favor of the claimant and against the defendants.

The decedent, Frank Weitz, was employed as a butcher by his brother, David Weitz, the proprietor of a meat market located at 104 Logan Street in the "Hill District" of the City of Pittsburgh. This particular section of the city is reputed to be a "tough" neighborhood, the scene of frequent quarrels, brawls and riots often resulting in damage to property and theft of merchandise. On the 9th day of March, 1937, at about eight o'clock in the evening, a robbery was attempted upon a nearby storekeeper, who raised an alarm and frightened the would-be robber into flight through the neighborhood with a crowd, assembled by the hue and cry, running at his heels. The path of the chase led in the direction of defendant's shop. Unaware of the cause of the commotion and fearful of threatened damage to his store, defendant called upon his employees, Frank Weitz and Joe Leibowitz, for assistance in the protection of his property. Acting under the instructions of his employer, the decedent, Frank Weitz. left the inside of the store and went outside. There he joined the crowd in pursuit of the unknown hold-up suspect for quite some distance. When decedent had reached a point in advance of others in the crowd, the fleeing criminal turned and shot him. The wound was fatal. Decedent was survived by his wife, the present claimant, and two minor daughters.

The referee, after hearing, dismissed the claim and disallowed compensation on the ground that decedent had abandoned the course of his employment. The referee found that decedent's employer had merely instructed him to go outside and investigate the trouble, but that decedent, after imminent danger to his employer's property had passed, had continued in pursuit of the hold-up suspect for a distance of approximately 350 to 400 feet to the place where he was shot. The board modified the referee's findings and awarded compensation. The findings of the board were to the effect that the decedent was following the instructions of his employer when he pursued the suspect, and that the chase covered a distance of 100 to 350 feet from the butcher shop.

On appeal to the court below, the award of the board was affirmed and judgment entered thereon. This appeal followed.

The questions involved in this case are (1) whether there is any competent evidence to sustain the findings of the board, and (2) if so, whether those findings support the conclusion of law that claimant's decedent, when fatally injured, was "actually engaged in the furtherance of the business or affairs of the employer" within the meaning of the Act of 1915, June 2, P. L. 736, Art. III, §301 (77 PS §411).

The general character of the district in which the employer, David Weitz, maintained his business was far from being peaceful or quiet. The immediate neighborhood was often the scene of brawls, fights and minor riots. On several occasions, the defendant proprietor, found it necessary to send his employees out to chase people away from the store. On the particular occasion with which we are concerned, it appears that similar instructions were given the employees. Testimony relative to the specific instructions issued by defendant was given by Joseph Leibowitz, a co-employee with claimant's decedent. His testimony, in part, was

as follows: "Q. What did he (defendant) say? A. He said, 'Frank, (the decedent) Frank, hurry up. They are going to break up the store'. He said, 'Hurry up, Frank, and go ahead and chase them away.' He said, 'Joe, hurry up. See what is wrong.' And he sent Frank and me out to chase the crowd away." This testimony was uncontradicted and not denied in any particular; it was clear, precise and positive. The defendant himself testified that he did not clearly recollect the language or the substance of his instructions beyond sending his employees outside to see what was going on. When asked to corroborate or contradict the above quoted testimony of Mr. Leibowitz, he answered, "I was excited. I may have said that or anything. I was nervous and excited." In explanation of his instructions, defendant testified, "I was afraid they were going to break in. I got a very large window. The wall was one window. Maybe I said that. I sent him (decedent) out to protect the store, and then I sent Joe out, and when I went out it was too late. That is all."

The decedent ran out of the store and joined the crowd in pursuit of the hold-up suspect. The exact distance that he gave chase before being shot is the subject of conflicting testimony. One witness estimated the distance to be between 350 and 400 feet; Mr. Leibowitz thought the distance was about 100 feet; the defendant judged the distance to be close to 150 feet. The evidence sustains the board's finding that the distance was between 100 and 350 feet; it also supports the inference that only a few minutes elapsed between the time decedent ran from his employer's premises and the time he reached the point where he was shot.

The Workmen's Compensation Board found that decedent had been instructed to go outside and "quell the riot." While the exact language is not found in the record, it is our opinion that the evidence does warrant the finding that decedent was instructed on

this and former occasions to chase the crowd away because of his employer's fear of damage to his property, and that on this particular occasion he gave chase for a distance of 100 to 350 feet. And where the findings of fact made by the board are based on legally competent evidence, they are conclusive and this court has no power to revise those findings: *Ford v. A. E. Dick Co.*, 288 Pa. 140, 150, 135 A. 903; *Baumann v. Howard J. Ehmke Co.*, 126 Pa. Superior Ct. 108, 111, 190 A. 343.

There remains to be considered, therefore, only the question of whether claimant's decedent was, at the time of the fatal injury, actually engaged in the furtherance of his employer's business. This question is, on the state of facts found, one of law: *Paulin v. Williams Co.*, 122 Pa. Superior Ct. 462, 186 A. 415, affirmed, 327 Pa. 579, 195 A. 40. To be entitled to compensation for injuries received when off the premises of the employer, the employee must be actually engaged in furthering the business of the employer: *Palko v. Taylor-McCoy Coal & Coke Co. et al.*, 289 Pa. 401, 137 A. 625; *Herman v. Follmer Truck Co.*, 129 Pa. Superior Ct. 447, 452, 195 A. 632.

In the case of *Shoffler v. Lehigh Valley Coal Co.*, 290 Pa. 480, 139 A. 192, at pp. 483, 484, the Supreme Court stated: "Under the Compensation Act, an injury in the course of employment embraces all injuries received while engaged in furthering the business of the employer, and injuries received on the premises, subject to these limitations: (1) the employee's presence must ordinarily be required at the place of injury, or, (2) if not so required, the departure of the servant from the usual place of employment must not amount to an abandonment of employment, or be an act wholly foreign to his usual work; it must be merely an innocent or inconsequential departure from the line or place of duty. ...... The incident necessary to constitute a break in the course of employment must be of a pronounced character."

It appears from the testimony that the defendant proprietor had, on several prior occasions, found it necessary to send decedent out to chase people away from the store in order to protect his property. On this particular occasion, decedent's conduct, under his employer's order, did not constitute a deviation or departure wholly foreign to his duties. The fact that decedent may have been playing the part of a good citizen in pursuing a dangerous criminal within the limitations of the immediate neighborhood, cannot serve as a basis for charging him with the abandonment of his employment where the very role had been assigned to him by his own employer in the protection of this property. We do not consider the act of the deceased even an "inconsequential departure from his line or place of duty," in view of the comparatively short distance he had run and the few moments that had elapsed from the time he left the premises until he was shot: See *Slipp v. Fidelity & Casualty Co. of N. Y.,* 91 Pa. Superior Ct. 526, 527. Rather do we regard him as having remained within the course of his employment and engaged in the furtherance of the defendant's interests.

Under the facts found and supported by the evidence, the board and the court below properly concluded that the deceased was fatally injured by an accident which occurred in the course of his employment, while actually engaged in the furtherance of his employer's business.

At the oral argument of this case it was stated and admitted by counsel for both parties that the appellee, Mrs. Shirley Weitz, had remarried. This change in claimant's status necessitates the modification of the compensation award, and hence requires that the record be remitted to the court below with instructions to remit the record to the board for the sole purpose of ascertaining the date of her remarriage and modifying the award made to the dependents by reason of claimant's remarriage in accordance with the provisions of the Workmen's Compensation Act. It is so ordered.