ternative motions to remand, therefore, are overruled.

For the reasons assigned the judgments appealed from are affirmed.

FOURNET, C. J., absent.

60 So.2d 449

EDWARDS v. LOUISIANA FORESTRY COMMISSION.

No. 40174.

Jan. 14, 1952.

On Rehearing June 2, 1952.

Godfrey & Edwards, Many, for plaintiff-appellant.

Wilkinson, Lewis & Wilkinson, Shreveport, for defendant-appellee.

FOURNET, Chief Justice.

We ·granted a writ of certiorari in this case to review the decision of the Court of Appeal for the Second Circuit affirming the district court's judgment maintaining

the defendant's exceptions of no cause and no right of action and dismissing ·the plaintiff's suit to recover compensation for an injury sustained in rescuing an imperiled child on the employer's premises. See, · Edwards v. Louisiana Forestry Commission, La.App., 49 So.2d 53.

The facts disclosed by the record are that the plaintiff, Charles Louis Edwards, was employed by the defendant, the Louisiana Forestry Commission, as a fire towerman in Sabine Parish. The tower in which he was stationed is located on a 9.69 acre tract of land under lease to the employer and on which the employer constructed a house that was furnished the plaintiff for his occupancy. According to Robert L. McKillup, district forester, Edwards was required to maintain this site.

Shortly after noon on December · 31, 1947, while on duty in the tower, Edwards noticed that a child was being attacked by a large dog on the ground approximately twenty feet from the tower base, and within the acreage under lease to the employer. In rushing precipitously down the tower stairway to rescue the child from the dog, which was subsequently found to be rabid, the plaintiff suffered a severe strain that resulted in a left inguinal hernia and a potential hernia on the right. ·

The defense is predicated on the theory that injuries sustained in this manner are not compensable under the Workmen's Compensation Law of Louisiana, Act 20 of 1914, as amended, LSA–R.S. 23:1021 ·et

seq., because they do not "arise out of and in the course of employment."

The Court of Appeal, relying on the cases of Kern v. Southport Mill, Ltd., 174 La. 432, 141 So. 19, and Brown-Pacific-Maxon, Inc., v. O'Leary, 182 F.2d 772, decided by the United States Court of Appeal for the Ninth Circuit, held that regardless how commendable or human the impulse giving rise to the rescue, recovery may not be had in this case because the act in which the claimant was engaged at the time of the injury (going down the stairway) did not redound "to the benefit or interest of" the employer. The court acknowledges that the phrase "'in the course and scope of employment'" is synonymous in our jurisprudence with "'in contemplation of' the employment", and that injuries resulting from "natural" acts of an employee are properly considered compensable because they can be "reconciled with his employment," but it reasoned the rescue in this case does not come within even the most liberal purview of the judicial "amplification, extension and liberalization" of the act. In other words, the court does not regard the plaintiff's impulsive rush to the rescue of this child as either a "natural" act, or one that is within the "contemplation" of the employment.

The Kern case is clearly not analogous from a factual standpoint, for the employee was not there confronted with a sudden emergency imperiling the life of a stranger on the employer's premises. Instead, he

was injured in a traffic accident while returning to the employer's mill after having completed outside work he was specifically instructed to do. This court, in reversing the Court of Appeal and awarding compensation, relied on a long-line of cases (among which are Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532; Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 938, 74 So. 256; and Dyer v. Rapides Lumber Co., 154 La. 1091, 98 So. 677, stated in the opinion to be practically conclusive) holding, in effect, that injuries do arise "out of" the employment even though they are sustained while the employee is traveling to and from work or engaged in "horse play," and also where they are inflicted by a foreign agency or a third person, whether a stranger or a fellow employee.

It necessarily follows that however persuasive or consoling the defendant and the Court of Appeal may find certain language in the Kern opinion, including the so-called test for determining when an injury arises "out of" the employment, it is not controlling, since it was not necessary for a decision. In fact, it is in direct contravention of the very authorities said to be conclusive, for they recognize the inability of the courts to draft any determinative test. As Justice Sutherland says in the Cudahy case [263 U.S. 418, 44 S. Ct. 154]: "Whether a given accident is so related or incident to the business must

depend upon its own particular circumstances. *No exact formula can be laid down which will automatically solve every case."* And as Justice Provosty expresses it in the Myers case [140 La. 937, 74 So. 258]: "* * * after vain attempts at formulating some verbal test for determining when the injury has or not arisen out of the employment, the courts have come to the conclusion that each case must be determined from its own facts; that *the question cannot be solved by phrases."* (Italics ours.)

In the O'Leary case, the other authority relied on, the United States Court of Appeals for the Ninth Circuit, concluded that the claim arising from the accidental death of an employee drowned in an attempt to rescue strangers stranded on a reef separated from the employer's recreational facilities by a channel in which the employees were specifically forbidden to swim could not be allowed, because an attempt to rescue persons not known to be in the employer's service, undertaken in forbidden waters outside the employer's premises, resulted from an act entirely disconnected from any use for which the recreation was provided and so did not arise out of or in the course of employment.

However, since the decision of the Court of Appeal we are here reviewing, the Supreme Court of the United States, reversing the circuit court's judgment on a writ of certiorari, states: "We think this is too

restricted an interpretation of the Act. *Workmen's compensation is not confined by common-law conceptions of scope of employment."* Commenting further, the court observes: "The test of recovery is not a causal relation between the nature of the employment of the injured person and the accident * * *. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. *All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose. * * * A reasonable rescue attempt * * * may be 'one of the risks of the employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute.' "* 340 U.S. 504, 71 S.Ct. 470, 471, 95 L.Ed. 483. (Italics ours.)

This is not only the rule with respect to rescue attempts under conditions of emergency, but also those acts that are universally termed "horse play." In the landmark case of Hartford Accident & Indemnity Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11, 15, certiorari denied by the United States Supreme Court, 309 U.S. 689, 60 S.Ct. 891, 84 L.Ed. 1032, the court very graphically demonstrates why emphasis is no longer placed on a particular act and its tendency to forward the employer's work in determining whether an injury is compensable. It very aptly points out that "Men do not discard their personal qualities when they go to work. Into the

job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their tendencies to carelessness and camaraderie, as well as emotional makeup. * * * Work could not go on if men became automatons repressed in every natural expression. * * These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment." After a very exhaustive review of the subject, the court concludes that under the broad view now taken of these statutes, " * * * no more is necessary than that the work subject the employee to a peril which comes from the fact that he is required to be in the place where it strikes when it does so. It is immaterial whether the place is the employer's premises or a street; whether the risk arises from physical features or human agencies connected with the place; whether it is a common occurrence or an extraordinary happening; one which threatens only employees at work or others also." See, in addition, the opinion of Cardozo in the case of Leonbruno v. Champlain Silk Mills, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522.

These pronouncements reflect the modern judicial concept of compensation legislation, which is based on the premise that the phrase "arising out of the employment" does not have the same connotation as the common law "scope of employment," the interpretation earlier attributed to it, but means, instead, the employment viewed from any aspect—its nature, conditions, obligations, and incidents. They lend emphasis to the growing recognition of the fact that judicial interpretation of these acts creating liability irrespective of fault in the light of common law liability predicated on fault hedges this humanitarian legislation about with the very restrictions it sought to circumvent and abolish, and nullifies the underlying insurance principle inherent in this industrial compensation. See, in addition to the above mentioned authorities, 3 NACCA 15, 52, 53; 4 NACCA 19; 7 NACCA 42; 36 Cornell Law Quarterly 229, 230, 234, 257, 258; 20 Fordham Law Review 220; 37 Va.L.R. 766; 1949 Insurance Law Journal 196; Horovitz on Injury and Death Under Workmen's Compensation Laws 5, 7, 8; Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 423, 44 S.Ct. 153, 68 L.Ed. 363, 369, 30 A.L.R. 532, and the authorities therein discussed.

Since 1910, the courts, almost without exception, have recognized the worker's right to the benevolent protection of the compensation laws in doing the natural and humane thing when confronted with a sudden and unexpected situation which, without opportunity for reflection, impels immediate action. Jenks v. Carey, 136 Cal.App. 80, 28 P.2d 91; Pacific Indemnity Co. v. Industrial Accident Commission, 105 Cal.App. 535, 288 P. 129; United States Fidelity Co. v. Industrial Accident Com-

mission, 174 Cal. 616, 163 P. 1013; Hartford Accident & Indemnity Co. v. Industrial Accident Commission, 202 Cal. 688, 262 P. 309, 58 A.L.R. 1392; Globe Indemnity Co. v. Legien, 47 Ga.A. 539, 171 S. E. 185; Wetlaufer v. Howse, 146 Kan. 500, 71 P.2d 879; Dragovich v. Iroquois Iron Co., 269 Ill. 478, 109 N.E. 999; Baum v. Industrial Commission, 288 Ill. 516, 123 N.E. 625, 6 A.L.R. 1242; Marion Malleable Iron Works v. Ford, 82 Ind.App. 152, 144 N.E. 552; Young v. Mississippi River Power Co., 191 Iowa 650, 180 N.W. 986; Yates v. Humphrey, 218 Iowa 792, 255 N. W. 639; Brightman's Case, 220 Mass. 17, 107 N.E. 527, L.R.A.1916A, 321; Van Ness v. Borough of Haledon, 136 N.J.L. 623, 56 A.2d 888; Babington v. Yellow Taxi Corporation, 250 N.Y. 14, 164 N.E. 726; Bernadine v. Nat. Transp. Co., 266 App. Div. 927, 43 N.Y.S.2d 866; Davis v. North State Veneer Corp., 200 N.C. 263, 156 S. E. 859; Denton v. Young, 203 Okl. 688, 226 P.2d 406; Weitz v. Weitz, 136 Pa. Super. 191, 7 A.2d 83; Johnson v. Chicago & N. W. Ry. Co., 69 S.D. 111, 7 N.W.2d 145; Hartford Accident & Indemnity Co. v. Frye, Tex.Civ.App., 55 S.W.2d 1092; General Accident, Fire & Life Assurance Corp. v. Evans, Tex.Civ.App., 201 S.W. 705; Belle City Malleable Iron Co. v. Rowland, 170 Wis. 293, 174 N.W. 899, 7 A.L.R. 1071.

While it is true that employees injured in rendering assistance in emergencies have been denied compensation in a few rare instances, the decisions in those cases turned on the peculiar facts, Priglise v. Fonda, J. & G. Ry. Co., 192 App.Div. 776, 183 N.Y.S. 414, or were based on the conclusion that the act leading to the injury did not further the interest of the employer or benefit him, the view stemming from the narrow common law concept of "scope of employment" which no longer obtains in determining what injuries arise "out of" the employment. Northwestern Pacific R. Co. v. Industrial Accident Commission, 174 Cal. 297, 163 P. 1000, L.R.A.1918A, 286; Sichterman v. Kent Storage Co., 217 Mich. 364, 186 N.W. 498, 20 A.L.R. 309; and Roberts' Case, 284 Mass. 316, 187 N.E. 556. Actually, the New York and California cases have been tacitly, if not specifically, overruled by the later cases of Ocean Accident Guarantee Corp. v. Industrial Accident Commission, 180 Cal. 389, 182 P. 35, and Babington v. Yellow Taxi Corporation, 250 N.Y. 14, 164 N.E. 726, while the Roberts' case, if not overruled by Caswell's Case, 305 Mass. 500, 26 N.E. 2d 328, is so contrary to the modern view of what acts arise "out of" the employment as to render the holding absurd on its face. In that case the plaintiff was employed to paint a house and, in connection therewith, was required to heat water to wash down the sashes and floors. In heating the water he set the house on fire. He was injured when he attempted to put the fire out. The court held he was not entitled to compensation because he stepped outside the scope of his employment when

he incurred a danger of his own choosing that was not within the contemplation of his contract of service, the theory being that he was employed to paint houses, not to put out fires.

The Court of Appeal recognizes in the opinion we are reviewing, as it must, that compensation is universally awarded where the employee is injured in an attempt to save himself, to rescue another employee from danger, or to save his employer's property. See the annotations at 6 A.L.R. 1247, 50 A.L.R. 1148; and L.R.A.1916A, 56. It overlooks the fact that recovery is also allowed where the employee is injured or killed while aiding a distressed stranger, both on and away from the employer's premises. Mobile Liners v. McConnell, 220 Ala. 562, 126 So. 626; Transport Co. of Texas v. Arkansas Fuel Oil Co., 210 Ark. 862, 198 S.W.2d 175; Ocean Accident & Guarantee Corp. v. Industrial Accident Commission, 180 Cal. 389, 182 P. 35; Puttkammer v. Industrial Commission, 371 Ill. 497, 21 N.E.2d 575; Short v. Kerr, 104 Ind.App. 118, 9 N.E.2d 114; Waters v. William J. Taylor Co., 218 N. Y. 248, 112 N.E. 727, L.R.A.1917A, 347; Stilson v. Littlewood, 244 App.Div. 858, 279 N.Y.S. 781; Oklahoma Ry. Co. v. Cannon, 198 Okl. 65, 176 P.2d 482; Herman v. Follmer Trucking Co., 129 Pa. Super. 447, 195 A. 632; O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S. Ct. 470, 95 L.Ed. 483; 7 Schneider's Workmen's Compensation Text 214, Section

1652; 71 C.J. 667; 4 NACCA 23; 22 Mississippi Law Journal 183.

An analysis of these cases involving emergencies discloses some turn on the theory that an employee going to the aid of those in distress does not break the thread or chain of his employment, because such acts are natural and/or foreseeable. Dragovich v. Iroquois Iron Co., 269 Ill. 478, 109 N.E. 999; Waters v. William J. Taylor Co., 218 N.Y. 248, 112 N.E. 727, L.R.A.1917A, 347; Yates v. Humphrey, 218 Iowa 792, 255 N.W. 639; Babington v. Yellow Taxi Corporation, 250 N.Y. 14, 164 N.E. 726; O'Leary v. Brown-Pacifiic-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; Puttkammer v. Industrial Commission, 371 Ill. 497, 21 N.E.2d 575; and Belle City Malleable Iron Co. v. Rowland, 170 Wis. 293, 174 N.W. 899, 7 A.L.R. 1071. Others are predicated upon the theory that in doing the natural and humane thing in an emergency the employee does not, in contemplation of law, step outside the employment because his actions (1) are within the scope of those things it is contemplated he will do, or is reasonably expected to do, under the circumstances, Mobile Liners v. McConnell, 220 Ala. 562, 126 So. 626; Denton v. Young, 203 Okl. 688, 226 P.2d 406; Marion Malleable Iron Works v. Ford, 82 Ind.App. 152, 144 N.E. 552; Ocean Accident Co. v. Industrial Accident Commission, 180 Cal. 389, 182 P. 35; Short v. Kerr, 104 Ind.App. 118, 9 N.E.2d 114, 115; Baum v. Industrial Commission,

288 Ill. 516, 123 N.E. 625, 6 A.L.R. 1242; Brightman's Case, 220 Mass. 17, 107 N.E. 527, L.R.A.1916A, 321; (2) result from a risk or hazard of the employment, Babington v. Yellow Taxi Corp., 250 N.Y. 14, 164 N.E. 726; Wetlaufer v. Howse, 146 Kan. 500, 71 P.2d 879; O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S. Ct. 470, 95 L.Ed. 483; Brightman's Case, 220 Mass. 17, 107 N.E. 527; (3) spring from a moral duty resting upon humanitarian principles, Young v. Mississippi River Power Co., 191 Iowa 650, 180 N. W. 986; Waters v. William J. Taylor Co., 218 N.Y. 248, 112 N.E. 727, L.R.A. 1917A, 347; (4) are expressly warranted or impliedly permitted under the contract of employment, Jenks v. Carey, 136 Cal. App. 80, 28 P.2d 91; Brightman's Case, 220 Mass. 17, 107 N.E. 527; Hartford Accident & Indemnity Co. v. Industrial Accident Commission, 202 Cal. 688, 262 P. 309, 58 A.L.R. 1392; or are in accordance with custom. Pacific Indemnity Co. v. Industrial Accident Commission, 105 Cal. 535, 288 P. 129; Van Ness v. Borough of Haledon, 136 N.J.L. 623, 56 A.2d 888; and Yates v. Humphrey, 218 Iowa 792, 255 N.W. 639.

The late Justice Cardozo, while a member of the highest court in New York, very eloquently portrayed the reason for the law's recognition and approval of human response to distress when, in the case of Wagner v. International Ry. Co., 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1, he said:

"Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. * * * 'The human mind * * acts with celerity which it is sometimes impossible to measure.' The law does not discriminate between the rescuer oblivious of peril and the one who counts the cost."

The Supreme Court of California, in the case of Ocean Accident Corp. v. Industrial Accident Commission, 180 Cal. 389, 182 P. 35, 36 (one of the leading cases), in granting compensation to an employee injured in an attempt to rescue a child about to be run over by an automobile on the employer's premises, held: " * * * it was reasonably within the course of his employment, within the scope of those things which might reasonably be expected of him as an employé, that he should attempt to prevent an accident on his employer's premises * * *." Continuing, the court observes: *It is not difficult to imagine how summarily the services of an employé would be dispensed with, who, seeing that such an accident was about to happen, held back and did nothing to prevent it on the excuse that it did not come within the scope of his employment.* (Italics ours.)

In this same vein, see the case of Van Ness v. Borough of Haledon, supra [136 N.J.L. 623, 56 A.2d 891], where it is stated that an employee waiting for specific au-

thorization before acting in an emergency, and measuring his duty in accordance therewith, "would soon be relieved of his commission"; Denton v. Young, supra [203 Okl. 688, 226 P.2d 412], where the court said an employer would "naturally expect his employee to go to the relief of one in dire distress"; and the case of Yates v. Humphrey, supra [218 Iowa 792, 255 N.W. 641], where the court said the employees were "expected to perform such acts of courtesy and helpfulness".

In another leading case, Puttkammer v. Industrial Commission, 371 Ill. 497, 21 N. E.2d 575, 578, cited by the United States Supreme Court with approval in the O'Leary case, a truck driver returning to his employer's yard after delivering coal was fatally injured when he attempted to aid a child hurt in an automobile collision in which his truck was not involved. The Supreme Court of Illinois, awarding compensation to the employee's dependents, states: "Giving aid to an injured child on the highway is just as natural and is just as much to be expected from a driver of another vehicle as stopping to water horses drawing his dray or stopping to get liquid refreshments for himself. * * * Whether Puttkammer went to see whether he could pass the damaged automobiles safely or to lend aid to the injured child he was carrying when struck and killed, both acts were foreseeable and it is immaterial whether they were foreseen or not."

The courts of other states, in considering cases involving injuries sustained in rendering assistance to strangers in distress, have awarded compensation where an employee was killed while attempting to rescue a passerby imprisoned under a fallen tree, Short v. Kerr, supra; a laborer employed intermittently to check ships in port was drowned assisting a captain to get on board a vessel, Mobile Liners v. McConnell, supra; a cook was injured attempting to warn guests of a fire in a hotel, Stilson v. Littlewood, supra; employees were injured while rendering assistance in traffic accidents, Herman v. Follmer Trucking Co.; Oklahoma Ry. Co. v. Cannon and Transport Co. of Texas v. Arkansas Fuel Oil Co., all supra; and even where an employee died as the result of overexertion brought on by an attempt to rescue his clothes from a sinking barge. Brightman's Case, supra.

While it is true that Edwards, the employee in the instant case, was not employed to rescue children, it was reasonably within the scope of those things contemplated by his employment that he would go to the rescue of anyone endangered on his employer's premises, the care and control of which was under his charge. For him to have done otherwise would not only have been most unnatural and inhuman, but would undoubtedly have given good cause for his summary dismissal. We do not think that either the

spirit or the letter of the compensation statute requires that Edwards be penalized for obeying such a natural and commendable instinct. As Cardozo so well expresses it in the Wagner case, supra, "The law does not discriminate between the rescuer oblivious of peril and the one who counts the cost."

It is our opinion, therefore, that the plaintiff's injury arose out of and in the course of his employment within the meaning and contemplation of our compensation law, and that the Court of Appeal erred in affirming the judgment of the district court maintaining the defendant's exceptions of no cause and no right of action.

In so far as the merits are concerned, there is a dispute as to the extent of disability and the basis on which compensation is to be computed and we would, ordinarily, remand the case to the appellate court for the purpose of resolving these questions. However, inasmuch as the exceptions were referred to the merits and only maintained after all of the evidence had been taken, which evidence is now before us, we feel justice can best be served by reviewing the merits, particularly since the case has been in the courts since 1948 and any other course would cause undue delay and work hardship on the employee.

The defendant apparently concedes that the plaintiff has been injured, and does not deny the injury was sustained as alleged. It contends, however, that the plaintiff is not entitled to recover the compensation demanded—65% of the weekly wage for a period not to exceed 400 weeks—because he has not suffered a total and permanent disability, being presently lucratively engaged in operating a dairy, which requires him to do heavy work.

This is not the criterion for determining when an employee is entitled to the maximum compensation. Under the judicial interpretations of our workmen's compensation law, a worker has suffered total and permanent disability when he is unable to perform work of the same nature or of a character similar to that being performed at the time of the accident. Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9; Stieffel v. Valentine Sugars, 188 La. 1091, 179 So. 6; Carlino v. U. S. Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Ranatza v. Higgins Industries, 208 La. 198, 23 So.2d 45; Hughes v. Enloe, 214 La. 538, 38 So.2d 225; Scott v. Hillyer, Deutsch, Edwards, Inc., 217 La. 596, 46 So.2d 914; Goebel v. Railway Express Agency, D.C., 93 F.Supp. 56.

The record discloses that the plaintiff is not able to do the work in which he was engaged at the time of his injury for the reason that he cannot climb the steep stairway leading to the observation tower. As a matter of fact, he, in good faith, endeavored to carry on his duties with the aid of a truss for almost a year after he was injured, and was finally compelled to resign because the climbing of these stairs aggravated his condition and he was suffer-

ing increasing pain. Further, the medical testimony not only affirmatively shows that he cannot continue his duties as a fire towerman, but that he cannot secure other work in the lumber industry because he cannot pass the physical examination.

We conclude, therefore, that the plaintiff is totally permanently disabled to perform the duties assigned to him at the time he sustained his injury and that he is, accordingly, entitled to compensation at the rate of 65% of wages during the period of disability, not to exceed 400 weeks. See LSA-R.S. 23:1221 (2).

It is the plaintiff's contention that in arriving at this wage, he is entitled to have added to his monthly salary of $75, the rental value of the house located on the grounds furnished for his occupancy by the employer. The defendant's position is that this house formed no part of his wage for the reason that all towermen were paid $75 a month, regardless whether a house was furnished.

Under the jurisprudence of this court, the rental value of this house, which we find from the testimony amounted to $50 a month, must be added to the plaintiff's salary in determining his base pay. Collins v. Spielman, 200 La. 586, 8 So.2d 608. It makes no difference whether all towermen were furnished living quarters, for the record affirmatively shows that this house was furnished in order that the employer might secure the services of Edwards twenty-four hours a day. Those who were not furnished homes were only on duty during certain specified hours of the day. It was, therefore, in the nature of extra pay for longer hours of service.

The plaintiff also prayed for a judgment in an amount not to exceed $500 for medical expenses incurred, and to be incurred, in the treatment of his injuries. There are no statements in the record to substantiate this claim, although one of the witnesses, Dr. L. H. Murdock, testified the bill for his services at the time of the trial amounted to $45, which he did not believe had been paid. We will, therefore, non-suit the plaintiff's demand with respect to this claim.

Finally, the plaintiff asks that his attorneys' fees be fixed at 20% of the amount awarded him, not to exceed $1,000, and that the medical expert fees be fixed and taxed as costs.

Our law makers, obviously for the protection of the injured employee, have made it mandatory that the claims of the attorneys for legal services rendered in connection with claims arising under the compensation laws not be enforceable unless approved by the court, and, in any event, that they shall not exceed $1,000, which amount is to be paid in the manner designated by the court. LSA-R.S. 23:1141.

The record in this case offers ample proof of the diligence and ability with which the plaintiff's attorneys have prosecuted his claim, and that a great deal of time has been consumed in trying the case

in the district court and appealing it to the Court of Appeal and to this court. We feel, therefore, that they are entitled to the maximum amount allowed by law—$1,000.

Witnesses who testify as experts receive reasonable fees, which may be taxed as costs of the case. Article 462.17 of the Code of Practice, Dart's Edition. In fixing such fees, the court is admonished to consider "the value of the time employed and the degree of learning or skill required." From our appreciation of the evidence, we think $25.00 for each of the medical experts testifying in this case is ample. It does not appear that any of them were inconvenienced for any appreciable length of time or that they were required to have any special medical skill or knowledge that would warrant a larger award.

For the reasons assigned, the judgment of the Court of Appeal for the Second Circuit, maintaining the defendant's exceptions of no cause and no right of action and dismissing the plaintiff's suit, is annulled and set aside.

It is now ordered and decreed that there be judgment in favor of the plaintiff, Charles Louis Edwards, in the amount of $18.75 a week, beginning January 8, 1949, during disability, for a period not to exceed 400 weeks, with legal interest from the due date of each installment until paid. It is further ordered that the fees of the attorneys, John P. Godfrey and E. L. Edwards, Jr., be fixed at $1,000, payable at the rate of 20% of the amount of compensation paid to the plaintiff under this judgment; and that the fees of the expert medical witnesses be fixed at $25.00 each, taxable as costs. The plaintiff's demand with respect to medical expenses is non-suited. All costs of these proceedings are to be borne by the defendant, Louisiana Forestry Commission.

HAMITER, J., concurs in the decree.

LE BLANC, J., concurs.

MOISE, J., absent.

On Application for Rehearing.

PER CURIAM.

The defendant, in a limited application for a rehearing in this case, has called our attention to the fact that, although the merits of the case were well briefed by both parties, we assured counsel when the case was argued that no decision would be rendered by this court on the merits, and that we did not, in fact, even permit them to argue the merits. We are, therefore, granting a rehearing to afford an opportunity for argument on this phase of the case.

On Rehearing

McCALEB, Justice.

In an application for a rehearing, in which no complaint was made relative to

our holding that plaintiff's injuries arose out and in the course of his employment, the defendant contended that we should not have passed upon the merits of the case because we had informed its counsel at the time of the original argument that only the exception of no cause of action would be considered. Recalling that such an assurance had been given, this rehearing was granted for the limited purpose of hearing argument on that phase of the case.

Besides other complaints, counsel for defendant initially maintain on this rehearing that the Court was without authority to grant judgment on the merits forasmuch as they were not considered by the district court.

This contention finds support in an unbroken line of jurisprudence. The case has reached here on a writ of certiorari to the Court of Appeal issued under authority of Section 11 of Article 7 of the Constitution. Thus, this court was invested "* * * with the same power and authority in the case as if it had been carried directly by appeal * * *" here. Under its appellate jurisdiction, the court exercises only the power of review, that is, a consideration of the rulings of the trial judge of which complaint is made.

Although the case was fully tried in the district court, the judge did not pass on

the evidence, being of the opinion that the defendant's exception of no cause of action, which had been previously referred to the merits, was well founded in law. Plaintiff's appeal to the Court of Appeal, which subsequently reached here, was prosecuted from this ruling of the trial court. Consequently, the evidence taken on the merits was not even required to be incorporated in the transcript for a proper disposition of the case, as it is established that "This Court can not take cognizance of facts upon which the court below has not acted and render a decision on those facts. Code of Practice, Article 895". City of Gretna v. Aetna Life Insurance Company, 206 La. 715, 20 So.2d 1. See also Conery v. New Orleans Waterworks Co., 39 La. Ann. 770, 2 So. 555; Saint v. Martel, 122 La. 93, 47 So. 413; Parks v. Hughes, 145 La. 221, 82 So. 202 and Haddad v. Commercial Motor Truck Co., 146 La. 897, 84 So. 197, 9 A.L.R. 1380.

The last cited case is identical with this one in that, there, after a trial on the merits of a compensation case, judgment was rendered sustaining an exception of no cause of action. On appeal here,[1] the judgment was reversed and the exception overruled but the case was remanded to the lower court for decision on the merits as they had not been previously adjudged.

1. The case was decided in 1920. Prior to the Constitution of 1921, the Courts of Appeal did not have exclusive appellate jurisdiction of suits for compensation under the Employers Liability Act.

It is therefore ordered that our original opinion and decree, insofar as it awards plaintiff compensation, be and it is set aside and the case is remanded to the district court for decision. on its merits, reserving to both parties the .right to file such additional pleadings and evidence as may be relevant to a final disposition of the cause. The costs of the Court of Appeal and of this Court are to be paid by defendant.