HARDY, Judge.
This is a compensation claim and plaintiff appeals from judgment rejecting his demands.
Plaintiff was employed as a lineman by United Telephone Company of Louisiana, Inc. and on Sunday, November 3, 1963, he answered an emergency call for repair work to his employer’s telephone lines in the vicinity of Oak Ridge, Louisiana. Plaintiff was assisted in this work by a fellow employee, one Sam P. Williams. After completing the repairs plaintiff and Williams stopped by the telephone exchange office in Oak Ridge, and, finding no other evidence of line trouble, then drove to Williams’ home, which was located about three miles west of Oak Ridge. Both plaintiff and Williams were driving corn-pany trucks. Plaintiff testified that after he and Williams stopped in front of the latter’s home it was his purpose to wait until Williams checked to ascertain if any further emergency calls had been received; that he and Williams then planned to do some work on what was designated as the 516 Line, and while Williams went into his house, plaintiff began transferring some tools to the Williams’ truck, seeing no need of using two vehicles for the work which was contemplated. However, plaintiff decided that he could use Williams’ tools and he returned his own tools to his truck, after which he reached behind the seat of the vehicle to pick up a loaded shotgun, which accidentally discharged, and the load of shot struck plaintiff in the lower abdomen.
In support of his testimony plaintiff tendered Williams as a witness, but Williams’ testimony not only fails to corroborate plaintiff’s version, but, in many instances, serves to directly contradict some of its asserted facts. This witness testified that he knew of no trouble on the 516 Line and had no intention of doing any further work that day unless he found some notice of emergency calls at his home. The witness further testified that plaintiff had asked permission to go squirrel hunting in a wooded tract across the road from Williams’ home, which property he owned, and that as he walked toward his house he called back to plaintiff to ask if he wanted to borrow one of his guns and was informed by plaintiff that he had his own gun. Thereafter, finding the front door locked, Williams proceeded to the back door of his home, and, at about the time he entered, heard the shot caused by the discharge of plaintiff’s shotgun.
It appears that it was customary for employees, in computing their time of work, to include the time en route from their homes to the point in which they engaged in their labors and return. Plaintiff testified that if there were no other repair calls awaiting attention, he did intend to go hunting before returning to his home and *610 would have excluded whatever time was involved in this personal mission.
On the basis of this testimony, conceding that plaintiff was on stand-by duty, it follows that he must be regarded as having been within the course and scope of his employment at the time of the accident. Therefore, the issue tendered by this appeal requires a determination as to whether the accident arose out of plaintiff's employment. Bearing upon this point, it is pertinent to examine the reasons for the presence of the loaded shotgun in the company truck which was used by plaintiff. After testifying as to the fact that he occasionally carried sums of money belonging to his employer, and that he was sometimes on the road in rural areas after dark, plaintiff, nevertheless, admitted that his principal reason for carrying the shotgun was for use in hunting expeditions. It is noted that counsel for plaintiff in brief strenuously contends that all of the company’s employees carried guns in their vehicles to the knowledge of company officials and with their consent. In this argument counsel is somewhat in error for the testimony of Mr. T. E. Payne, plant superintendent for the company, was that he knew some of the employees occasionally carried guns in their trucks and that he, himself, sometimes carried a gun, but that the reason for this practice was for the purpose of hunting game during the season and not for the purpose of protection of property of the company.
We are confronted with the necessity' for construing the meaning and application of the term “arising out of the employment.” This particular phrase was considered by the Supreme Court in Kern v. Southport Mill, 174 La. 432, 141 So. 19, and the opinion contains the following observation:
“In determining, therefore, whether an accident ‘arose out of the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer’s business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer’s business reasonably require that the employee be at the place of the accident at the time the accident occurred?”
The above pronouncement has resulted in the adoption of what has been designated as' the “time and place” doctrine. The effect of this standard of interpretation has led to the conclusion that an accident arises out of the employment in every instance where the duties of the employee require him to be in the place where at the time when the accident occurred. This doctine was carried to what the author of this opinion considers a ridiculous extreme in the opinion of this court in Livingston v. Henry & Hall et al. (2nd Cir., 1952), 59 So.2d 892, which held that an employee could recover for injuries suffered by reason of an assault by a husband, to whose wife the employee had been paying some special attention, on the ground that the employee’s duties required him to be in a place at a time when the jealous husband could vent his anger by shooting.
In the Livingston case the court considered and one of the Judges comprising the majority concurred in the theory that the case fell within another somewhat artificial principle designated as the “zone of danger” doctrine as announced by the Supreme Court in Edwards v. Louisiana Forestry Commission, 221 La. 818, 60 So.2d 449.
Another complication arises from a pronouncement in the highly regarded text of Malone’s Louisiana Workmen’s Compensation Law and Practice that the terms “during the course of employment” and “arising out of employment” are inter-dependent (cf. 1964 Pocket Part Supplement, Section 192, page 71).
We are in hearty agreement with the observation of the distinguished author of the above cited text that “ * * * the solution of the problem cannot be arrived at through the invoking of novel phrases.” It seems, therefore, that it is necessary to *611 go somewhat beyond the appealing but somewhat tenuous novelties of “time and place” or “zone of danger” doctrines, and even the apparent inter-dependence of “during course of employment” and “arising out of employment.”
First, it is to be observed that the Supreme Court in the Kern case did not delimit the entitlement to recovery to a mere compliance with the time and place idea, but coupled with this requisite the question as to whether the employee was pursuing his own business or pleasure. Even in the Livingston case there is no question as to the conclusion that the employee at the time and place was engaged in his employer’s business. It is also to be noted that in the Kern case the employee was in a zone of danger, that is, a public street.
We think that one important element which has not been given consideration in the cited cases, and others of a similar nature, bears upon the nature and control of the instrumentality which caused the injury and the purpose for which such instrumentality was intended to be used. By way of reducing this factor to simple terms, we make the point that an accident does not arise out of the employment when the instrumentality is under the control of the employee and is neither necessary nor being used in connection with his employment. This conclusion was reached in Leckie v. H. D. Foote Lumber Co. (2nd Cir., 1948, writs denied), 40 So.2d 249.
Developments in the consideration of accidents arising out of employment is found in the somewhat recently published Casebook on Workmen’s Compensation by Malone and Plant in Chapter 5, pages 214, et seq. Of some interest and pertinency with respect to the instant case are the pronouncements of courts of other jurisdictions on what is denominated as the “positional risk” doctrine, which is simply a variation of what we have above referred to as the “zone of danger” principle. Study of the cases from other jurisdictions indicates that they have been confronted with the same difficulty in attempting to establish a practical and reasonable basis for the application of the principle. Some courts have considered the elements to which we have referred supra and in the course of these efforts have found distinctions between risks arising from or originated by external sources with which the employee has had no connection. This principle was enunciated in Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256, in which the court declared that the causative danger must be peculiar to the work — incidental to the character of the business— not independent of the relation of master and servant and must appear to have had its origin in a risk connected with the employment. (This discussion in the opinion in the Myers case has been quoted in the recent case of Williams v. United States Casualty Co. [4th Cir., 1962, writs denied], 145 So.2d 592, in which recovery was allowed because the accidental shooting was not provoked by the employee, who at the time was clearly and exclusively engaged in attending to the duties of her employment.)
The facts of the instant case, measured by the generally approved standards, are convincing to the effect that the causative danger with which we are here involved arose purely from a personal activity which had no connection with nor origin in the employment.
In the case before us, the record establishes the fact that the shotgun was in the control of the employee and was not connected with nor designed for any use in the duties of his employment, and, further, that the accidental discharge was caused by the handling of the weapon in preparation for a personal use, entirely disconnected from and disassociated with the employment.
A consideration of these factors serves to distinguish the time and place and zone of danger rationales.
On behalf of plaintiff strong reliance is placed upon the holding of this court in *612 Holland v. Continental Casualty Co. (2nd Cir., La.App., 1934), 155 So. 63, which involved facts remarkably similar in many respects to those under examination.
In the Holland case the injury resulted from the accidental discharge of a shotgun. The argument was made that the gun was carried for the personal use and purpose of the employee, “such as bird shooting”, and not for the primary-purpose of aiding in the protection of the master’s property. This is the identical argument that is advanced in the instant case. The court rejected the argument in the Holland case and based its conclusion upon the factual finding that the plaintiff carried the shotgun as protection against the risk of robbery since his duties required the carrying of merchandise, cash and checks of considerable value. This reason was explicitly set forth in the opinion as follows:
“ * * * since he has been injured, accidentally, by a weapon carried to prevent being robbed and perhaps injured, it seems clear to us that his case is compensable.”
As ,we have above observed, according to plaintiff’s own testimony in this case his primary purpose in carrying the loaded shotgun was to have it available for his own use in hunting. It follows that the presence of the shotgun did not arise out of the employment but was desirable only for the satisfaction of the personal pleasure of the plaintiff.
It may be added that there was no necessity in connection with plaintiff’s employment for the handling of the shotgun, and plaintiff’s act was in furtherance of his intention to use the instrument for hunting.
While it is true that plaintiff’s duties required him to be at the time and place in which the accident occurred, these duties did not require him to be exposed to the danger which caused the accident. Therefore, even under the zone of danger interpretation, plaintiff’s claim should fail. The only zpne of danger was created by the plaintiff in preparation for a purely personal mission, having no connection with nor relation to the business of his employer or the responsibilities of the employment.
For the reasons assigned, the judgment appealed from is affirmed at appellant’s cost.